In the Matter of **PETOSKY ASPHALT PAVING COMPANY, Bankrupt.**
No. 63–2609–H.

United States District Court
E. D. Michigan, S. D.
Dec. 28, 1965.

Honigman, Miller, Schwartz & Cohn, Norman Hyman, Detroit, Mich., for trustee.

Gottlieb & Silitch, George Silitch, Detroit, Mich. for Thos. L. Petosky, petitioner.

Lawrence Gubow, U. S. Atty., Cross, Wrock, Miller, Vieson & Kelley, Detroit, Mich. for creditors' committee.

Dickinson, Wright, McKean & Cudlip, Detroit, Mich., for Allied Chemical Corp.

KAESS, District Judge.

On September 30, 1963, Petosky Asphalt Paving Company petitioned for an arrangement under Chapter XI of the Bankruptcy Act,[1] and on January 6, 1964, consented to be adjudged a bankrupt. In its Statement of Affairs, filed on January 14, 1964, bankrupt stated, in item 11a, that the bankrupt had "transferred Cash to Thomas L. Petosky to protect against garnishments commencing in March 1963. All except $31,536.45 returned to Corporation for operating purposes and payment of debts. Said $31,536.45 charged to Thomas L. Petosky, personally."

On November 8, 1963, the Receiver petitioned the Referee for authority to engage an accountant to make a preliminary audit of the books and records of the bankrupt. On January 7, 1964, the Receiver filed a further request for permission to employ accountants to make a complete audit. On February 18, 1964

the Trustee petitioned for an Order to Show Cause requiring the president of bankrupt, Thomas L. Petosky, to appear and show why he should not be required to turn over to the Trustee $31,536.75.[2] After extensive hearings, a Turnover order was issued on August 7, 1964.

The matter is now before this court on a petition of the bankrupt for review of the Turnover order. The petition is based on three grounds: that the findings of fact and conclusions of law of the Referee are erroneous and contrary to the evidence; that the obligation of petitioner to pay this sum was not a proper subject for Turnover proceedings; and that a certain memorandum should have been admitted in evidence.

The Referee found, inter alia, that, of $72,365.00 withdrawn from the bankrupt, in the form of certified checks payable to Thomas L. Petosky, from March to September, 1963, all except $31,511.45 had been returned to the corporation by way of expenditures made by Mr. Petosky in behalf of the corporation; that on the date the Receiver was appointed Thomas L. Petosky had in his possession certified checks, made payable to him, belonging to the bankrupt, totalling $31,300.00; that Thomas L. Petosky at that time informed the Receiver that he had no funds of the bankrupt in his possession; that within two weeks after the filing of the bankruptcy petition Thomas L. Petosky negotiated certified checks payable to him, but representative of corporation funds, totalling $31,300.00; that none of the funds represented by checks negotiated by Thomas L. Petosky after appointment of the Receiver had been returned to the bankrupt; and that Thomas L. Petosky's attempted explanation that he expended the funds on behalf of the corporation by paying wages to employees employed

---

1. On the same day Louis F. Davis was appointed Receiver with full power and authority and a bond fixed in the amount of $25,000.00.

2. The petition for an Order to Show Cause also alleged that Thomas L. Petosky had received repayment of alleged loans

in the amount of $19,575 in July of 1963 and asked that Thomas L. Petosky be required to turn over said sum. However, the Referee declined to issue a turnover order for this amount because of the lack of evidence to show that Thomas L. Petosky received a $19,000 payment.

by the Receiver was not credible, in the light of the fact that all payroll obligations subsequent to the appointment of the Receiver were made by him on checks made payable to the employee and countersigned by the Referee, and the testimony of the bookkeeper that any monies expended by any individual in behalf of the corporation at that time which was made known to her was represented by proper entries in the books and records of the corporation.[3]

The Referee concluded that as only five months had elapsed since Thomas L. Petosky was known to have possession of the $31,300.00 and he had no credible explanation as to what happened to the money, it was a fair and reasonable inference that Thomas L. Petosky had at the time of the turnover order present control of the money.[4]

General Order in Bankruptcy, No. 47, provides that the judge shall accept the findings of fact set forth in the report of the Referee unless they are "clearly erroneous". There is ample evidence in the record to support each of the findings of the Referee.

■ Petitioner claims that Referee did not find that on the date of the turnover order that Thomas L. Petosky had in his possession or control, or the ability from his personal resources to produce, the $31,534.45 as ordered. Petitioner relies upon Maggio v. Zeitz, 333 U.S. 56, 68 S.Ct. 401, 92 L.Ed. 476 (1948) in support of the contention that there must be such a finding of fact before a turnover order may issue. However, this court does not so interpret the Maggio case. In Maggio the Supreme Court condemned the automatic application of the presumption that past possession continues until the possessor explains when and how it ceased, without regard to the reasonableness of its use in the particular case. However, the court did not forbid the use of the presumption in reaching a conclusion of present possession. Rather, the

Court stated, at page 65, 68 S.Ct. at page 406:

"[T]urnover orders should not be issued, or approved on appeal, merely on proof that at some past time property was in the possession or control of the accused party, *unless the time element and other factors make that a fair and reasonable inference. Under some circumstances* it may be permissible, in resolving the unknown from the known, to reach the conclusion of present control from proof of previous possession." (Emphasis supplied)

This Court is of the opinion that the use of an inference was fair and reasonable, under the facts of this case. The record is clear. Thomas L. Petosky had more than $31,000 in his possession after the institution of bankruptcy proceedings. Less than five months later, and only one month after he signed and filed the bankrupt's schedules in the matter, the turnover proceeding was instituted. Thomas L. Petosky's explanations as to what happened to this money, either before or after the institution of the turnover proceedings, were completely incredible and rebutted by the evidence. Given the relatively short period of time, the amount of money involved, and the lack of a credible explanation of its whereabouts, the record clearly supports the Referee's conclusion that Thomas L. Petosky still had possession of the money on the date of the order. There is no evidence that he squandered or gambled away the money. There is no evidence that he spent large sums of money during that period. In other words, there is absolutely no believable evidence that Thomas L. Petosky did not have the money. Under these facts and circumstances the inference of present control from previous possession is justified.

■ Petitioner further contends that he does not have to show what he did with the money and that the Trustee

---

3. Certificate of Referee on Petition for Review, pages 1–3.

4. Certificate of Referee on Petition for Review, pages 4–5.

has the burden of proving that petitioner has it. It is correct that the burden of proof was on the Trustee as he had the affirmative of the issue. However, once he made out a prima facie case, the burden of rebutting it was on the petitioner. Oriel v. Russell, 278 U.S. 358, 366, 49 S.Ct. 173, 73 L.Ed. 419 (1929); Sheinman v Chalmers, 33 F.2d 902 (3rd Cir. 1929). While the petitioner did not need to account for the money, it was necessary for him to show in some way that he no longer had it. This he did not do.

■ Petitioner's remaining contentions may be disposed of briefly. The argument that this was not a proper subject for summary turnover proceedings is without merit. Thomas L. Petosky is president and 80% stockholder of Petosky Asphalt Paving Corporation and has admitted that he was holding $31,536.45 in his capacity as agent. In Maggio v. Zeitz, supra, 333 U.S. at page 61, 68 S. Ct. 401, the Supreme Court recognized that Section 7 of the Bankruptcy Act imposes a duty on the bankrupt to effectually turn over all of his property and interests, and, in the case of a corporation, the duty rests on the officers, directors and stockholders. 11 U.S.C. § 25. The Court approved of the turnover procedure as a method by which the Bankruptcy Court may summarily retrieve concealed and diverted assets, the withholding of which, pending the outcome of plenary suits, would intolerably obstruct and delay administration.

Petitioner's contention that a memorandum, dated December 3, 1954, purporting to show that petitioner paid obligations on behalf of the corporation, should have been admitted into evidence, was neither briefed or argued to this Court. However, it appears that a memorandum made and signed in 1954 would have little relevance to the question of whether petitioner paid obligations on behalf of the corporation in 1963 or 1964.

It is ordered, therefore, that the petition for review is denied, and that this matter be returned to the Referee in accordance with this opinion and order.