**R. A. BASS and Miracle Marine Sales Company, Inc., Appellants,**

v.

**Lemuel C. HUTCHINS, Trustee in Bankruptcy of Miracle Marine Sales Company, Bankrupt, Appellee.**

**No. 25817.**

United States Court of Appeals Fifth Circuit.

Oct. 16, 1969.

George M. Leppert, G. Wray Gill, Sr., New Orleans, La., for appellants.

M. W. Parse, Jr., Houston, Tex., for appellee; Fulbright, Crooker, Freeman, Bates & Jaworski, Houston, Tex., of counsel.

Before COLEMAN and GOLDBERG, Circuit Judges, and SKELTON, Judge of the Court of Claims.*

GOLDBERG, Circuit Judge:

We here deal with the question of bankruptcy jurisdiction over a corporation which was anything but sedentary and the legal propriety of a turnover order directed against its peripatetic president. This bankruptcy proceeding was initiated on April 6, 1967, by the filing of an involuntary petition by Union Texas Petroleum Company (Union Texas) against Miracle Marine Sales Company, Inc. (Miracle Marine). The district court referred the matter to the Referee on April 25, 1967, and Miracle Marine was adjudged a bankrupt by default on April 27, 1967. Miracle Marine then filed a farrago of motions, including a motion to dismiss for want of jurisdiction, out of which there survives for our appellate consideration the question of whether the adjudicating court had jurisdiction over the subject matter. The contention is made that there is no evidence that Miracle Marine had its principal place of business in the Eastern District of Texas for the greater part of the six months preceding the filing of the petition. There was evidence of a Missouri incorporation and a permit to do business in Texas with a registered office in Greenville in the Eastern District of Texas. There was testimony about a ramshackle filling station at Myra Junction in the Eastern District of Texas and evidence concerning accounts in banks in many parts of that district. All of the bankrupt's motions were overruled and a trustee was appointed. Thereafter, Union Texas filed a petition for a turnover order to be directed to R. A. Bass, the president of Miracle Marine.

On July 3, 1967, Union Petroleum of Texas and the trustee sought to question Bass about Miracle Marine's activities in the Eastern District of Texas. Bass, however, refused to answer most of the questions on Fifth Amendment grounds, as he had by that time been indicted for mail fraud on facts arising out of the transactions about which he was being questioned. Bass also refused to produce the books and records relating to Miracle Marine's business. The basic turnover facts are as follows: During June, July, August, and September, 1966, funds of Miracle Marine, aggregating in excess of $250,000.00, were appropriated by Bass. Neither Bass nor anyone representing the bankrupt offered any rhyme or reason for the withdrawal of the $250,000.00 by Bass, and a turnover order for $250,000.00 directed against Bass was entered by the Referee.

* Sitting by designation as a member of this panel.

On this appeal Miracle Marine and Bass seek to post-mortem the jurisdiction of the district court. They contend that for the period prior to the filing of the bankruptcy petition Miracle Marine did not have its residence, domicile or principal place of business within the court's territorial jurisdiction "for a longer portion of the preceding six months than in any other jurisdiction."[1] On this ground alone they seek to dismiss the proceeding.

Appellants' argument is premised upon the assumption that § 2(a) (1) of the Bankruptcy Act, 11 U.S.C.A. § 11(a) (1), is a jurisdictional fiat rather than a mere latitudinal venue provision. The effect of the statute, argues Bass, is that it is absolutely jurisdictional with no play for the venue concept whatsoever. This argument is an old wives' tale of pre-1952 vintage. It is now clear that the cases cited in its support[2] have been soured by the 1952 amendments to the Bankruptcy Act[3] and must be deemed no longer controlling.

Since 1952 the courts and the applicable authorities have consistently held that § 2(a) (1) of the Bankruptcy Act, notwithstanding its language and location in the Act, is a true venue provision and is not jurisdiction confining or defining. In re Bankers Trust, 7 Cir. 1968, 403 F.2d 16; In re Eatherton, 8 Cir. 1959, 271 F.2d 199; In re Martinez, 10 Cir. 1957, 241 F.2d 345; Saper v. Long, S.D. N.Y. 1955, 131 F.Supp. 795; In re Fada Radio and Electronic Co., S.D.N.Y.1955, 132 F.Supp. 89; 1 Collier on Bankruptcy § 2.14 (14th ed.). Remington has observed in his treatise on bankruptcy that "The 1952 changes in § 32 of the Bankruptcy Act * * * have tended to increase the feeling that the statutory provisions as to institution of bankruptcy proceedings in the district court where the alleged bankrupt has his residence, domicile, or place of business relate to proper venue rather than to jurisdiction to entertain the proceedings." 1 Remington on Bankruptcy § 40 (5th ed. Supp. 1958). The Eighth

1. § 2(a) (1) of the Bankruptcy Act, 11 U.S.C.A. § 11(a) (1):

    (a) The courts of the United States hereinbefore defined as courts of bankruptcy are hereby created courts of bankruptcy and are hereby invested, within their respective territorial limits as now established or as they may be hereafter changed, with such jurisdiction at law and in equity as will enable them to exercise original jurisdiction in proceedings under this title, in vacation, in chambers, and during their respective terms, as they are now or may be hereafter held, to—

    (1) Adjudge persons bankrupt who have had their principal place of business, resided, or had their domicile within their respective territorial jurisdictions for the preceding six months, or for a longer portion of the preceding six months than in any other jurisdiction, or who do not have their principal place of business, reside, or have their domicile within the United States, but have property within their jurisdiction, or in any cases transferred to them pursuant to this title;

    *     *     *     *     *

2. In re Federman, 2 Cir. 1941, 119 F.2d 754; In re DeSoto Crude Oil Purchasing Corp., W.D.La.1940, 35 F.Supp. 1.

3. § 32 of the Bankruptcy Act, 11 U.S.C.A. § 55, now provides:

    (a) In the event petitions are filed by or against the same person or by or against different members of a partnership, in different courts of bankruptcy each of which has jurisdiction, the cases shall, by order of the court first acquiring jurisdiction, be transferred to and consolidated in the court which can proceed with the same for the greatest convenience of parties in interest.

    (b) Where venue in any case filed under this title is laid in the wrong court of bankruptcy, the judge may, in the interest of justice, upon timely and sufficient objection to venue being made, transfer the case to any other court of bankruptcy in which it could have been brought.

    (c) The judge may transfer any case under this title to a court of bankruptcy in any other district, regardless of the location of the principal assets of the bankrupt, or his principal place of business, or his residence, if the interest of the parties will be best served by such transfer. July 1, 1898, c. 541, § 32, 30 Stat. 554; June 22, 1938, c. 575, § 1, 52 Stat. 857; July 7, 1952, c. 579, § 11, 66 Stat. 424.

Circuit has been even more emphatic in the view that § 2(a) (1) of the Act must be viewed as a venue provision. In the case of *In re Eatherton, supra,* we find the following discussion by Judge Matthes:

"*   *   * Reason and logic dictate that in enacting the amendments to § 32, Congress implicitly viewed the provisions of § 2, sub. a(1) as relating to venue rather than jurisdiction. Otherwise, how could there be 'wrong venue' for § 32, sub. b to remedy? Furthermore, if one of the alternative requirements of § 2, sub. a(1) must be present in order to empower the court to entertain a bankruptcy proceeding, the absence thereof would leave the court no alternative but to dismiss the proceeding, as was done here. Such a result cannot be squared with the permissive language of § 32, sub. b, that the judge, in a wrong venue situation, '*may,* in the interest of justice, upon timely and sufficient objection to venue being made, transfer the case to any other court of bankruptcy in which it could have been brought.' (Emphasis added.) Obviously, in a § 32, sub. b situation, the court is vested with discretion, in the interest of justice and upon timely and sufficient *objection to venue being made, to either transfer the case to a court where it could have been brought, or to retain the proceeding." 271 F.2d at 203.

The Eighth Circuit's conclusion that § 2(a) (1) imposes discretionary venue and not jurisdictional limitations on the district courts sitting in bankruptcy is convincingly sustained by Judge Matthes' subsequent discussion of the relevant legislative history behind the 1952 amendments to § 32, sub. b. See House Report No. 2320 on S. 2234, 82nd Cong., 2d Sess. 1952. Without attempting to reproduce that history here, it is enough to say that we are in full agreement with the Eighth Circuit's judgment of the Congressional purpose behind the 1952 Amendments:

"*   *   * Congress intended with certainty, that the residence, domicile or place of business requirements of § 2, sub. a(1) go solely to venue, and that § 32, sub. b was designed to clothe a court of bankruptcy with the same authority in a wrong venue situation, as that possessed by the United States District Courts with respect to other litigation in which venue is laid in the wrong division or district with this significant exception. Under Title 28, § 1406, U.S.C.A., a district court, in which a case is filed laying venue in the wrong division or district, '*shall dismiss,* or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought.' (Emphasis added.) As noted, under § 32, sub. b the court *may* transfer. It is not empowered to dismiss. Being thus vested with discretion, it seems clear that to hold that the court can dismiss an otherwise proper and meritorious petition, would completely frustrate congressional intent and design." 271 F.2d at 203–204.

The foregoing discussion would seem to make further extended commentary on § 2(a) (1) unnecessary. As clearly indicated by *In re Eatherton, supra,* § 2(a) (1) does not rise to jurisdictional stature. Such treatment is in accord not only with other provisions of the Act, and with Congressional intent as already noted, but is best suited to the mobility, national dimensions and multi-operational nature of modern business enterprises. We cannot but recognize that under modern business conditions a corporation's major assets and the location of its creditors and debtors are not always conveniently situated at the corporation's formal domicile or at its principal place of business. Given these circumstances we are and ought to be reluctant to find a vise-like jurisdictional grip by a single judicial district over enterprises that may be nation-wide and that may need to be placed under the shelter of the Bankruptcy Act. We therefore conclude that precedent, Congressional intent, and a much desired judi-

cial flexibility all point to the relaxed venue as opposed to the strict jurisdictional interpretation of § 2(a) (1) of the Act. Under this view the district judge may in his discretion transfer the case to another district if the interests of the parties so require. See § 32, sub. b. On the other hand, he may, if he chooses, retain the proceeding in the district where the petition is filed. In neither circumstance is he empowered to dismiss the action as appellants request. See *In re Eatherton, supra*, 271 F.2d at 204.

■■ Here, where the court's decision was to retain the proceeding, a failure to comply with the terms of § 2(a) (1) cannot operate to deprive the district court of power to adjudicate issues otherwise properly before it. At most, the circumstances upon which appellants rely raise a question of venue. In the present case appellants did not request a change of venue as required by the Act,[4] and there is absolutely no indication that the facts were of such an extraordinary nature that the district court ought to have transferred the case on its own motion. See Concession Consultants, Inc. v. Mirsch, 2 Cir. 1966, 355 F.2d 369, 371. Since the exercise of a court's discretion to retain a proceeding in bankruptcy or to transfer it to another district is not reviewable in the absence of a clear abuse of discretion, In re Bankers Trust, 7 Cir. 1968, 403 F.2d 16, 23, and then only in the event of a timely motion to transfer, the court's decision to retain this proceeding in the Eastern District of Texas can give appellants no just cause for complaint.

■ We next consider the turnover order. Less than a year before bankruptcy, Bass, the president of Miracle Marine, withdrew in excess of $250,-000.00 from the bankrupt corporation's bank accounts. Shortly after adjudication of bankruptcy, the Referee directed Bass to appear for examination in order to show cause why he should not be ordered to turn over $250,000.00 belonging to the bankrupt estate which Bass was alleged to have in his possession or control. At the hearing to show cause, the trustee proved a series of withdrawals by Bass from Miracle Marine's bank accounts occurring between June and September, 1966. Bass stood mute before this proof, asserting a Fifth Amendment silence, and a formal turnover order followed on June 5, 1967. The turnover order was confirmed by the district court and now Bass seeks reversal on the sole ground that there is no evidence that "Bass at the time of the bankruptcy suit possessed or controlled one dime of the bankrupt corporation estate."

The office of the turnover is described in Maggio v. Zeitz, 1948, 333 U.S. 56, 68 S.Ct. 401, 92 L.Ed. 476, upon which appellants rely. In that case an adjudication of contempt was vacated and the

4. § 32(b) of the Bankruptcy Act, 11 U.S.C.A. § 32(b):
    Where venue in any case filed under this title is laid in the wrong court of bankruptcy, the judge may, in the interest of justice, upon timely and sufficient objection to venue being made, transfer the case to any other court of bankruptcy in which it could have been brought.
    See also 28 U.S.C.A. § 1406:
    (a) The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought.
    (b) Nothing in this chapter shall impair the jurisdiction of a district court of any matter involving a party who does not interpose timely and sufficient objection to the venue.
    (c) If a case within the exclusive jurisdiction of the Court of Claims is filed in a district court, the district court shall, if it be in the interest of justice, transfer such case to the Court of Claims, where the case shall proceed as if it had been filed in the Court of Claims on the date it was filed in the district court.
    (d) As used in this section, "district court" includes the United States District Court for the District of the Canal Zone; and "district" includes the territorial jurisdiction of that court.

cause remanded to permit proof that the contemnor was not in possession of the subject matter of the turnover. In the course of its opinion, the Court, while disparaging the infrangible conclusiveness of the presumption of continuous possession, was not so disdainful of the district court's findings as to order the bankrupt's president free though his alleged defalcations had occurred twenty months before the turnover order. The present case does not involve a contempt proceeding. We are asked only to say that there is no evidence to justify the issuance of the turnover order. In perusing the relevant portions of the *Maggio* opinion, we find that the Supreme Court does not deny the efficacy of an inference of continuing possession; it only rejects the positivity of a fossilized presumption of such possession. It cautions against a too mechanical application of the inference that possession yesterday suggests continuing possession today. We are told that a court of appeals should not approve a turnover order "unless the time element and other factors make that a fair and reasonable inference." 333 U.S. at 65.

With this admonition before us, we must nonetheless conclude that the passage of less than a year between Bass' withdrawal of large sums of money and the hearing on the order to show cause is not a sufficient time to destroy the inference of present possession where past possession and corporate looting are so clearly indicated. Indeed, some of the sums covered by the Referee's turnover order had been in Bass' possession no more than nine months at the time their surrender was mandated, and absolutely no evidence existed to indicate their expenditure by Bass or dissipation since that time. Under these circumstances we do not think the inference of continued possession unreasonable.

A striking parallel to the case at bar is found in Sahn v. Pagano, 2 Cir. 1962, 302 F.2d 629, cert. denied, 371 U.S. 819, 83 S.Ct. 34, 9 L.Ed.2d 59, which involved the propriety of a turnover order directed against a corporate executive who had appropriated to his own use some $745,-000.00 in corporate funds. Approximately four months later a turnover order was issued despite the fact that the defendant had taken the Fifth Amendment, and despite the existence of evidence that he had given personal notes in exchange for the funds. Subsequent to affirmance by the Second Circuit, the defendant was held in civil contempt for violation of the turnover order and confined in the Federal Detention Headquarters in New York City for failure to comply with the turnover order. Defendant then brought a petition for habeas corpus. In upholding the dismissal of the petition by the district court, Judge Swan observed for the Court of Appeals:

" * * * The passage of time will eventually erode the inference of continued control of stolen funds, Maggio v. Zeitz, 333 U.S. 56, 68 S.Ct. 401, 92 L.Ed. 476. But here *less than a year has passed,* and Pagano has offered no plausible account of what happened to them. The bankruptcy court should not be forced to abandon its coercive efforts as yet." [Emphasis added.] United States ex rel. Pagano v. Fitzpatrick, 2 Cir. 1964, 330 F.2d 953, 954, cert. denied, 379 U.S. 883, 85 S.Ct. 152, 13 L.Ed.2d 89.

See also In re Sterling-Harris Ford, Inc., 7 Cir. 1963, 315 F.2d 277, where the passage of approximately six months between the appropriation of corporate funds and the issuance of a turnover order was considered within the permissible limits of the continued possession principle.

The continued possession principle has also found recent application in the case of In re Petosky Asphalt Paving Company, E.D.Mich.1965, 248 F.Supp. 794, where a turnover order was upheld despite a lapse of more than a year since the defendant had appropriated corporate money. In answering the defendant's objection to the absence of evidence of present possession, the court noted:

" * * * It is correct that the burden of proof was on the Trustee as he had

the affirmative of the issue. However, once he made out a prima facie case, the burden of rebutting it was on the petitioner. Oriel v. Russell, 278 U.S. 358, 366, 49 S.Ct. 173, 73 L.Ed. 419 (1929); Sheinman v. Chalmers, 33 F.2d 902 (3rd Cir. 1929). While the petitioner did not need to account for the money, it was necessary for him to show in some way that he no longer had it. This he did not do." 248 F. Supp. at 797.

We find that the circumstances of the present case fully justify the Referee's turnover order. Certainly where stealth and clandestinity are the weapons of corporate looters, referees and courts are justified in the reasonable application of countervailing inferences. The burden is on the trustee to show that the corporate funds were misappropriated, but the alleged corporate plunderer must assume an explanatory role or subject himself to reasonable inferences or circumstantial evidence. The truth can free him.

The judgment of the district court is affirmed.