In re BROOKHOLLOW ASSOCIATES et al., Debtors in Proceedings for Arrangements Under Chapter XII.

Civ. A. No. 77–1530–S.

United States District Court, D. Massachusetts.

July 27, 1977.

John C. Wyman, Boston, Mass., with whom John J. O'Connor, Jr., Roche, Carens & DeGiacomo, Boston, Mass., and Irving D. Labovitz, Cooley, Shrair, Alpert & Labovitz, P. C., Springfield, Mass., were on brief, for appellants.

William F. Macauley, Boston, Mass., with whom Rene D. Varrin, Tyler & Reynolds & Craig, Boston, Mass., were on brief, for appellee.

## MEMORANDUM AND ORDER

SKINNER, District Judge.

The appellants, Thomas J. Donnelly and Charles A. Regulbuto, are the two general partners of four Connecticut limited partnerships, debtors in pending proceedings under chapter XII of the Bankruptcy Act. Three partnerships own and operate health care facilities in Connecticut, and the fourth provides accounting and management services to the other three. The ownership interests are identical for all four limited partnerships; the two general partners each own a ten percent interest; and the sole limited partner, Charles Brennick, holds an eighty percent ownership interest.

Creditors' petitions in bankruptcy were brought against the partnerships on July 15, 1976. On the same date, Brennick, as majority owner of the interest, sent notices dissolving the partnerships pursuant to sec-

tion 20(A) of the Limited Partnership Agreements. At the time, petitions under chapter XI and XII had been filed on behalf of Brennick and thirty-nine partnerships and corporations owned or controlled by him.

The subject matter of these consolidated appeals consists of a series of orders commencing on July 15, 1976, when the bankruptcy judge granted Brennick's ex parte application for appointment of receivers for each alleged bankrupt. Following a hearing, the court issued an interlocutory order denying motions to dismiss the petitions and continuing the appointment of receivers, dated July 19, 1976. Additional hearings were held, and an order was entered on November 5 limiting further presentation to documentary evidence. On January 6, 1977, the bankruptcy court denied motions to dismiss and applications for increases in petitioning creditors' bonds. After the limited partnerships had failed to answer the petitions, they were adjudicated bankrupts by default on January 24, and their motions for relief from the judgments under Fed.R. Civ.P. 60(b) were denied on February 23. The court entered an order the next day authorizing the appointment of a trustee under chapter XII for the partnership-debtors. The trustee was authorized to employ co-counsel and a consulting accountant by an order entered on February 28. On May 3, 1977, the bankruptcy court issued an order denying motions to dismiss the chapter XII converter petitions.

The appeals from these orders raise several issues: (1) the bases for jurisdiction and venue; (2) whether the bankruptcy court properly appointed receivers; (3) whether the court's limitation on the form of evidence to be introduced on the motions was an appropriate exercise of discretion; (4) whether the default adjudications of bankruptcy or the denial of the motions for relief from judgment constituted an abuse of discretion; (5) the propriety of the chapter XII converter petitions; and (6) whether the receiver and later the trustee were appointed to represent conflicting interests.

## JURISDICTION AND VENUE

The appellants rely on section 2(a)(1) of the Bankruptcy Act, 11 U.S.C. § 11(a)(1), in attacking the bankruptcy court's jurisdiction over the limited partnerships. Section 2(a)(1) invests courts of bankruptcy with jurisdiction to "[a]djudge persons bankrupt who have had their principal place of business, resided, or had their domicile within their respective territorial jurisdictions for the preceding six months." The appellants contend and the record discloses that the limited partnerships had their only place of business in Connecticut, were domiciled in Connecticut and owned property only in Connecticut.

Nevertheless, "[s]ince 1952 the courts and the applicable authorities have consistently held that § 2(a)(1) of the Bankruptcy Act, notwithstanding its language and location in the Act, is a true venue provision and is not jurisdiction confining or defining." *Bass v. Hutchins,* 417 F.2d 692, 694 (5th Cir. 1969); see Adv.Comm.Notes to B.Rule 116(a). In reaching its construction of section 2(a)(1), the *Bass* opinion noted that the 1952 amendments, specifically section 32 of the Act, 11 U.S.C. § 55, which deals with the transfer or retention of cases with improper venue, indicate that section 2(a)(1) is not jurisdictional but rather a venue provision. Section 32 has been revised in turn by Bankruptcy Rule 116. Rule 116, therefore, determines whether the partnerships were subject to the venue of the bankruptcy court.

The trustee argues that venue was proper under Rule 116(a)(3)(B), although the bankruptcy court did not rely on that ground. Subdivision (a)(3)(B) provides that "a petition commencing a bankruptcy case may be filed by or against a partnership . . . in a district where a petition under this title by or against a general partner is pending." It is uncontested that Brennick, the limited partner, was at the time a debtor in proceedings before the bankruptcy court. The trustee contends that Brennick should be deemed a general partner pursuant to section 5(k) of the Act, 11 U.S.C. § 23(k), which provides:

If a limited partnership is adjudged bankrupt, any limited partner who is individually liable . . . for any of the partnership debts shall be deemed a general partner as to such debts and, if he is insolvent, shall be subject to the provisions and entitled to the benefits of this title, as in the case of a general partner.

The bankruptcy court found and the records indicate that "Brennick is individually and personally liable for substantially all of the secured indebtedness of each of the Debtors." Findings ¶ 9, Memorandum on Motions to Dismiss, May 3, 1977.

The problem with the trustee's reliance on subdivision (a)(3)(B) is that it is an attempt at bootstrapping. A prerequisite to deeming Brennick a general partner according to section 5(k) is the partnerships' adjudication of bankruptcy. They were not adjudicated bankrupts until January 24, 1977, six months after the filing of the petitions. The bankruptcy court's retention of the petitions was proper, however, under two other subdivisions of Rule 116.

■ Rule 116(a)(4) provides that "a petition commencing a bankruptcy case may be filed by or against an affiliate of the bankrupt in a district where a petition under this title by or against the bankrupt is pending." The bankruptcy judge found the limited partnerships to be "affiliates" of the bankrupt within the definition of Bankruptcy Rule 901(3)(C), as "construed to secure the expeditious and economical administration of every bankrupt estate and the just, speedy, and inexpensive determination of every proceeding in bankruptcy," as mandated by Rule 903. To the extent that Rule 901(3)(C) applies, subdivision (3)(A) apparently applies as well. Brennick holds an eighty percent interest in each limited partnership and has substantial voting rights under the partnership agreements. Both subdivisions of Rule 901, however, define affiliates literally as "corporations."

Nevertheless, the bankruptcy court's conclusion that Rule 901 applies to these limited partnerships is supported by the decision In re Ira Haupt & Co., 343 F.2d 726 (2d Cir.), cert. denied, 382 U.S. 890, 86 S.Ct. 182,

15 L.Ed.2d 148 (1965). The Second Circuit in Haupt addressed the issue whether limited partners could vote their claims against the partnership in an election of a trustee in bankruptcy. Section 44(a) of the Bankruptcy Act, 11 U.S.C. § 72(a), disqualifies "stockholders or members" of a corporation from voting on the appointment of a trustee for the corporate estate. Section 1(8) of the Act, 11 U.S.C. § 1(8), defines "corporation" as including "partnership associations organized under laws making the capital subscribed alone responsible for the debts of the association." The limited partnership in Haupt, as the four limited partnerships on appeal, did not meet the literal definition of a corporation because "the general partners [were] personally liable for the debts of the partnership." 343 F.2d at 728.

The Second Circuit concluded, however, that at least for the purpose of the disfranchisement section of Act,

[a] limited partnership under New York law is possessed of sufficient of the powers and privileges of private corporations not possessed by individuals or general partnerships to meet the definition of "corporation" in § 1(8) of the Act.

Id. at 729. The court reasoned that the Bankruptcy Act, the partnership agreement and partnership law differentiate between creditors' claims and the investment interests of both general and limited partners of a limited partnership.

■ These limited partnerships should be treated as corporations for the purpose of Bankruptcy Rule 901(3) as well. The purpose of the affiliate rules is to help the bankruptcy court to administer economically and efficiently different estates with substantial interests in common. The affiliate definitions interrelate directly with the provisions in the Bankruptcy Rules covering venue and joint administration. See Adv. Comm.Notes to B.Rule 901(3). Although the partnership agreements confer limited liability on Brennick and reserve ordinary management decisions to the general partners, Brennick enjoys substantial voting control by virtue of his eighty percent interest. His position, therefore, is very simi-

lar to that of the major stockholder of a corporation.

■ The bankruptcy court justified its retention of the petitions on the alternative ground of Bankruptcy Rule 116(b)(2), which provides:

> If a petition is filed in a wrong district, the court may, after hearing on notice to the petitioner or petitioners and such other persons as it may direct, dismiss the case or, in the interest of justice and for the convenience of the parties, retain the case or transfer it to any other district.

Subdivision (b)(2) invests the bankruptcy court with considerable discretion in applying the flexible venue provisions of the Act and Rules. *See Bass v. Hutchins, supra,* 417 F.2d at 695–96. The bankruptcy judge's findings that the interest of justice and convenience of the parties would be best served by retention of the petitions, in light of the interrelationships between the four limited partnerships and Brennick and other debtors in pending proceedings, were not clearly erroneous. *See* Findings ¶ 21, Conclusions ¶ 4, Memorandum and Order Denying Motions to Dismiss, Jan. 6, 1977.

### APPOINTMENT OF RECEIVERS

The appellants contend that the orders entered on July 15, 1976, granting Brennick's ex parte application for appointment of receivers, and on July 19, 1976, continuing the appointment of receivers, constituted an abuse of discretion by the bankruptcy judge. Bankruptcy Rule 201(c) provides that

> a receiver may be appointed without notice if irreparable loss to the estate may otherwise result. An application for appointment of a receiver without notice and any order of appointment made without notice shall state what loss may result and why it would be irreparable.

Brennick's verified application does list several factors underlying his opinion that irreparable harm may result, although it does not specify why the general partners could not be expected to manage the businesses in the best interests of the partnerships and their creditors. The July 15 order is even

more sparse, merely stating that the appointment "is essential for the preservation of the property" and that without receivers "irreparable loss may result." Any defects in the ex parte application and order are of no consequence, however, because the ex parte nature of the proceedings ended when a hearing was held the following day.

■ The standard for the appointment of receivers after notice and hearing is set forth in Bankruptcy Rule 201(b): "specific facts showing the necessity for the appointment." This has long been understood as requiring that the appointment of receivers be in the best interests of the estate and its creditors. The bankruptcy court's findings, supported by the record and particularly by documentary evidence introduced as early as July 1976, satisfy the requirement of Rule 201(b). *See* Findings ¶¶ 12, 16–19, Memorandum and Order Denying Motions to Dismiss, Jan. 6, 1977.

### LIMITATION ON FORM OF EVIDENCE

■ On November 5, 1976, the bankruptcy court entered an order limiting further presentation of evidence on pending motions to documentary form. The order clearly reserved for all parties the opportunity to submit affidavits and other written evidence together with memoranda of law and came after evidentiary hearings had been held on July 16, 23 and 27. This limitation on the form of further evidence was well within the bankruptcy court's discretion, as recognized by Fed.R.Civ.P. 43(e) and incorporated by Bankruptcy Rule 917.

### DEFAULT ADJUDICATIONS AND DENIAL OF RULE 60(b) MOTIONS

■ The appellants failed to file their answers within five days after notice of the order denying their motions to dismiss, entered on January 6, 1977, and thus did not answer the petitions within the time allowed by the Act and Rules. *See* § 18(b), 11 U.S.C. § 41(b); B. Rules 112, 712(a). Consistently with the policy of prompt administration of bankrupt estates, the bankruptcy court acted within its discretion in

adjudicating the partnerships bankrupt by default. *See* § 18(e), 11 U.S.C. § 41(e); B. Rule 115(c).

 Similarly, the bankruptcy court did not abuse its discretion by denying the appellants' motions under Fed.R.Civ.P. 60(b) for relief from the adjudications of bankruptcy. Whether the appellants' neglect was excusable is debatable at best, and they have made no plausible showing of defenses on the merits. The record discloses no proposed answers appended to any of the pleadings.

### CHAPTER XII CONVERTER PETITIONS

 The most difficult issue raised by these appeals concerns the validity of the chapter XII converter petitions, filed by Brennick on behalf of the limited partnerships. Bankruptcy Rule 12–7 authorizes the filing of a chapter XII petition "before or after adjudication." Rule 12–8 provides that "[a] petition may be filed pursuant to Rule 12–6 or 12–7 by all the general partners on behalf of the partnership." As explained earlier, the bankruptcy court was justified in deeming Brennick a general partner pursuant to section 5(k) of the Act, 11 U.S.C. § 23(k), as of the adjudications of bankruptcy. Moreover, even a partnership that has been dissolved may file a chapter XII petition so long as "all of its debts have not been paid or otherwise extinguished." 9 Collier on Bankruptcy ¶ 4.02, at 833 (14th ed. 1976) (footnote omitted). It is clear, however, that "all the general partners" have not consented in fact to the chapter XII petitions, as required by Rule 12–8. *See* Adv. Comm. Notes to Rule 12–8.

The trustee contends that by virtue of the partnership agreements, the general partners have consented in advance to the chapter XII filings by Brennick, the majority in interest.

> So long as all the general partners consent to the filing of the petition, it is sufficient if the petition is physically executed by less than all the partners. Such consent, it seems, could be validly expressed either at the time of the filing of

the petition, or in the articles of partnership, or in any other manner recognized by applicable state law.

8 Collier on Bankruptcy ¶ 4.02 [4.3], at 354 (14th ed. 1976) (ch. XI); *id.,* vol. 9, ¶ 4.02, at 833 (incorporating by reference to ch. XII discussion). The trustee argues that such prior consent is expressed in section 23(G) of the Limited Partnership Agreements, which states that "[e]xcept where otherwise specified, decisions of the partnership at [partnership] meetings shall be by majority vote of the ownership interest in the partnership." It is uncontested that Brennick called meetings for each partnership and voted his eighty percent interest in favor of filing the chapter XII petitions.

Courts addressing issues solely of state law have construed similar provisions for majority control of partnership decisions as "constitut[ing] a power of attorney to a majority of the general partners to act for the partnership." *See Hammond v. Chastain,* 230 Ga. 747, 199 S.E.2d 237, 239 (1973). A like construction of section 23(G) is more difficult in the context of applying Bankruptcy Rule 12–8, which should require a more specific form of advance consent in light of the voluntary nature of chapter XII proceedings. An expansive reading of section 23(G), moreover, is undercut somewhat by section 23(C) of the Agreements, which provides that "[e]xcept as otherwise specifically provided herein, nothing herein contained will be construed to constitute any partner the agent of another partner . . . ."

The bankruptcy court relied on equitable considerations in its conclusion that section 23(G) was "a form of unanimous agreement given in advance" and that it complied with the requirements of Rule 12–8. The bankruptcy court entered specific findings that the general partners had wasted partnership assets and had acted in bad faith. Findings ¶¶ 11, 13–15, 20, Memorandum on Motions to Dismiss, May 3, 1977. It found that "[n]either Donnelly nor Regulbuto [had] invested any funds of their own in the Debtors." *Id.,* Findings ¶ 10. Significantly, the court found that a forced liquidation

could disrupt the care at the nursing homes and adversely affect the public interest and that none of the private parties involved would benefit from a dismissal of the chapter XII converter petitions. *Id.,* Findings ¶ 19. These findings are not clearly erroneous.

The bankruptcy court summarized the equities underlying its refusal to dismiss the chapter XII petitions:

> The large amount of withdrawals over salaries, the payment of personal expenses with partnership assets, and the unexplained $100,000 withdrawal from a Tri/Vest savings account indicate a waste by Donnelly and Regulbuto of the partnership assets of these Debtors. That Donnelly and Regulbuto, each with a small minority interest in these Debtors, insist on liquidation rather than rehabilitation under Chapter XII is further indication of both bad faith and a waste of assets of these Debtors. No harm can result to Donnelly and Regulbuto, in light of this Court's supervision of the Chapter XII proceedings and the availability of a straight bankruptcy proceeding if an arrangement cannot be accomplished. I find that Donnelly and Regulbuto have wasted partnership assets and have acted in bad faith.

*Id.,* Findings ¶ 20.

*In re Ira Haupt & Co.,* 234 F.Supp. 167 (S.D.N.Y.1964), *aff'd in part on another issue,* 343 F.2d 726 (2d Cir.), *cert. denied,* 382 U.S. 890, 86 S.Ct. 182, 15 L.Ed.2d 148 (1965), *aff'd in part on other grounds,* 348 F.2d 907 (2d Cir. 1965) (per curiam), is at first blush inconsistent with the bankruptcy judge's conclusion. Haupt was a brokerage firm organized as a limited partnership. On November 20, 1963, Haupt experienced a huge capital deficiency and was suspended by the New York Stock Exchange. The Stock Exchange and creditor-banks proposed an agreement for "orderly liquidation" the following day, which was signed by all general partners. The agreement provided for the appointment of a committee with equal representation for the Exchange and the banks and with a representative from the Ex-change named as "liquidator." The agreement operated smoothly until March 23, 1964, when three limited partners filed an involuntary petition in bankruptcy against Haupt. On March 30, all of sixteen general partners except two joined in filing a chapter XI petition "for an arrangement which was tantamount to an implementation of the original agreement." 234 F.Supp. at 168–69. The district court affirmed the Referee's dismissal of the chapter XI petition.

One reason for the affirmance was that Haupt was hopelessly insolvent and its business could not have been rehabilitated.

> An additional ground . . . is that the Chapter XI proceedings were not consented to by all the general partners and were not voluntary. . . . [T]he commencement of the Chapter XI proceedings for an arrangement was not the act of Haupt but the act of the Committee. . . . The acts of all the general partners after November 20, 1973, were acts of abdication and surrender inconsistent with any notion of continuity of the partnership qua partnership. Under these circumstances, the Chapter XI proceedings were properly dismissed since the persons who initiated them had no power or right to do so; and even if it could be assumed, *arguendo,* that they retained their partnership status, the consent of all the partners was necessary and it was lacking here.

234 F.Supp. at 170; *accord, In re PHB Associates,* 11 Collier's Bank. Cases 483, 484–86 (D.D.C.Bank.Ct.1976) (partnership agreement with majority vote provision similar to § 23(G)).

The *Haupt* decision on its face suggests dismissal of these chapter XII petitions. The unanimous agreement of the general partners in *Haupt* to an "orderly liquidation" that would have accomplished substantially the same as a chapter XI arrangement was a more clear expression of prior "consent" to the filing than is section 23(G) of the Limited Partnership Agreements. Moreover, the *Haupt* opinion's discussion of the dissenting partners' rights

under the Bankruptcy Act to a forced liquidation as opposed to a chapter XI arrangement, see 234 F.Supp. at 170, undercuts the bankruptcy court's finding that Donnelly and Regulbuto were acting in bad faith by insisting "on liquidation rather than rehabilitation."

*Haupt* is distinguishable, however, from the situation on appeal. Before discussing the fatal defects of the chapter XI petition, the district court emphasized that the public interest did not factor into its analysis:

> Since nearly all the public customers have been paid out, what remains to be done with respect to the Haupt affairs no longer affects the public interest at large, but does affect substantial [and discordant private] interests . . . . [T]hey can be safeguarded only by the normal bankruptcy procedures.

234 F.Supp. at 169. In contrast, the pivotal factor in evaluating the propriety of these chapter XII petitions is the public interest.

■ The bankruptcy court found that a forced liquidation could disrupt the care provided to the patients of the three nursing homes. Avoidance of such disruption would be in the public interest, and chapter XII proceedings could protect the interests of Donnelly and Regulbuto. Bankruptcy Rule 12–8 should not be applied in a way that ignores the equities of the situation. *See generally Bank of Marin v. England,* 385 U.S. 99, 103, 87 S.Ct. 274, 277, 17 L.Ed.2d 197 (1966): "[W]e do not read these statutory words with the ease of a computer. There is an overriding consideration that equitable principles govern the exercise of bankruptcy jurisdiction." By their bad faith in wasting partnership assets and misappropriating funds, Donnelly and Regulbuto have effectively relinquished control over partnership decisions to Brennick, and they should be estopped from claiming the protection of a literal application of Rule 12–8.

## IMPARTIALITY OF TRUSTEE

■ The appellants contest the initial selection of the receivers and the subsequent selection of the trustee on the ground that their appointments were tainted with conflicts of interests. A receiver or trustee can "have no interest adverse to the estate." B. Rule 209(d); see B. Rule 201(f). The receivers appointed for the limited partnerships on July 15, 1976, apparently were the trustees and receivers of two bankrupt petitioning creditors of the partnerships. The order entered on that date merely states that the appointment "will not prejudice parties in interest." Joseph W. Bartlett, the trustee appointed under chapter XII on February 24, 1977, was at the time Brennick's chapter XII trustee. The apparent conflict between the interests of Brennick and those of the general partners of the limited partnerships is clear.

In light of the disposition of the other issues on appeal, however, I am hesitant to vacate the appointment of the chapter XII trustee on the present record. The bankruptcy court is directed to conduct further proceedings on this issue and to enter specific findings as to the propriety of Mr. Bartlett's appointment as trustee for these estates.

The orders are AFFIRMED and the petitions REMANDED to the bankruptcy court for further proceedings concerning the eligibility of the trustee.