In re H & S TRANSPORTATION COMPANY, INC., Debtor.

In re INLAND TRANSPORTATION COMPANY, Debtor.

In re RIVER LINE, INC., Debtor.

In re RIVER MERCHANDISING, INC., Debtor.

In re RIVER MANAGEMENT, INC., Debtor.

Bankruptcy Nos. 381–02803, 381–02851, 381–02897, 381–02898 and 381–02913.

United States Bankruptcy Court, M.D. Tennessee.

April 23, 1982.

James R. Kelley, Nashville, Tenn., for Inland.

C. Kinian Cosner, Jr., Nashville, Tenn., for River Line and River Merchandising.

Robert H. Waldschmidt, Nashville, Tenn., for River Management.

Irwin Deutscher, Trustee for H & S.

Keith M. Lundin, Nashville, Tenn., for trustee.

Harry D. Lewis, Nashville, Tenn., for movant Brent Towing.

Norman Pizza, New Orleans, La., for movant Zito-Metcalf.

Morris W. Macey, Atlanta, Ga., J. Stanley McNeese, Memphis, Tenn., for movant Union Planters Bank.

## MEMORANDUM

GEORGE C. PAINE, II, Bankruptcy Judge.

█ This matter is before the court on Union Planters National Bank (hereinafter

"Union Planters") motion requesting the appointment of a trustee for the debtors Inland Transportation Company (hereinafter "Inland"), River Line, Inc. (hereinafter "River Line") and River Merchandising, Inc. (hereinafter "River Merchandising") pursuant to 11 U.S.C. § 1104 and Brent Towing Company's (hereinafter "Brent Towing") and Zito-Metcalf, Inc.'s (hereinafter "Zito-Metcalf") motion requesting the joint administration of the debtors Inland, River Line, River Merchandising, H & S Transportation Company (hereinafter "H & S") and River Management, Inc. (hereinafter "River Management") pursuant to Federal Rules of Bankruptcy Procedure 117(b) and 11–4. A hearing on these motions was held on January 18, 1982. The numerous participants at this hearing included the two movants, the debtor corporations and numerous creditors of the debtor corporations. On March 23, 1982, Brent Towing filed an additional motion requesting the appointment of a trustee for River Line pursuant to 11 U.S.C. § 1104. Upon consideration of the proof presented at the hearing, stipulations, exhibits, briefs of all concerned parties and the entire record, this court finds that Union Planters' motion for the appointment of a trustee for Inland, River Line and River Merchandising should be granted. The court further finds that Irwin A. Deutscher should be appointed trustee in each of these cases and that these Chapter 11 cases, together with the Chapter 11 case of H & S, should be jointly administered pursuant to Federal Rule of Bankruptcy Procedure 117(b). The court declines to include River Management in this joint administration at this time since no party in interest has requested the appointment of a trustee in the River Management case.

The following shall constitute findings of fact and conclusions of law pursuant to Rule 752 of the Federal Rules of Bankruptcy Procedure.

H & S, Inland, River Line, River Merchandising and River Management have filed Chapter 11 petitions in this court. These Chapter 11 petitions have become known collectively as the "barge cases." These petitions were filed in 1981 in the following order: H & S on September 4, Inland on September 10, River Line and River Merchandising on September 14, and River Management on September 15. On October 16, 1981, this court appointed Irwin Deutscher as trustee for H & S.

At the time these petitions were filed, the five debtor corporations were each involved in various aspects of the river transportation business. H & S was engaged in the supplying and operation of towboats on inland waterways of the United States, River Line and River Management chartered barges to use in the shipment of freight on the inland river system and Inland, which both owned and chartered towboats, operated a towing company on the inland river system. River Merchandising was primarily engaged in trading freight contracts for the movement of bulk grain commodities.

The five debtor corporations were controlled by J.W. Armstrong, Jr., William H. Barton, Jr. and J.C. Campbell. Armstrong and Campbell were each 50% shareholders of River Line and River Merchandising, with River Management being a completely owned subsidiary of River Line. Armstrong was the president and 100% shareholder of Inland. Armstrong and Barton were 50% shareholders of River Transportation, Inc., (hereinafter "River Transportation") and H & S was a completely owned subsidiary of River Transportation.

At the hearing on January 18, 1982, Union Planters and Brent Towing presented the testimony of four witnesses in support of their respective motions. John Miller, a certified public accountant, testified that he had been employed by Armstrong on behalf of River Transportation from March 9 to November 27, 1981. Prior to his employment with River Transportation, Miller had been employed for eight and one-half years with Touche Ross & Company. Miller testified that, during the course of his employment with River Transportation, he became familiar with the financial affairs of the five debtor corporations. Specifically, Mil-

ler supervised the creation of a cash management system known as the J.W.A. Master Account which was established at the Citizens Bank of Hendersonville in Hendersonville, Tennessee. The account was designed to pool all the monetary resources compiled by approximately 20 corporations, including the five debtor corporations, in which Armstrong held an ownership interest. Any receipts from and disbursements to these companies would pass through this single master account. Miller stated that this financial arrangement resulted in frequent inter-company transfers and transactions. As of August of 1981, the J.W.A. Master Account contained a balance of approximately $759.31. During the course of his employment, Miller had never prepared any monthly reports of the debtor corporations' business affairs to be filed in connection with their bankruptcy proceedings.

Miller further testified that River Line had no cash assets when its bankruptcy petition was filed. At the end of November of 1981, River Line had ceased operations. At this same time, Inland had only one towboat operating on the inland river system.

Betty Jean Conner, Vice-President and loan officer at Hendersonville Citizens Bank, testified that approximately 23 companies, including the five debtor corporations, participated in the J.W.A. Master Account. Ms. Conner identified two "spread sheets" dated April of 1981 and August of 1981, respectively, which showed the monthly receipts and disbursements for the several participants in the J.W.A. Master Account.

Howard Brent, the owner of Brent Towing, testified that Brent Towing entered into a charter agreement on June 25, 1980, to furnish a tugboat to River Line. After River Line allegedly breached this agreement, Brent repossessed the boat on September 8, 1981, approximately six days before the filing of River Line's bankruptcy petition. Brent further testified that his company has paid approximately $100,-000.00 to remove liens which were placed on the boat while it was in River Line's possession. Brent stated that both Armstrong and Campbell had promised him that no liens would be placed on the boat. Although Brent Towing has filed a proof of claim against River Line, the company is not listed on River Line's schedules as a creditor. Brent Towing, however, is listed as a creditor on the Inland schedules.

J.W. Armstrong, who possesses a substantial ownership interest in the five debtor corporations, testified that, since J.C. Campbell resigned late in November of 1981, he has been managing all the debtor corporations with the exception of H & S, which is under the management of a trustee. Armstrong stated that on June 1, 1981, River Line had approximately 150 barges under its control. By September 1, 1981, this number had been reduced to about 50 barges. At the present time, River Line has ceased operations and returned all the barges to their original owners. The only assets of River Line are certain accounts receivable which River Line is currently attempting to collect through litigation. Armstrong estimated that River Line would have a plan of reorganization within two to three weeks.

Armstrong further testified that River Merchandising has conducted no new operations since the filing of its Chapter 11 petition. At the present time, River Merchandising is attempting to collect several pre-petition accounts receivable. Armstrong stated that Inland's only assets were pre-petition accounts receivable and one towboat which is still in operation.

Union Planters request for the appointment of a trustee in the Inland, River Line and River Merchandising cases is governed by 11 U.S.C. § 1104 which provides in pertinent part:

"(a) At any time after the commencement of the case but before confirmation of a plan, on request of a party in interest, and after notice and a hearing, the court shall order the appointment of a trustee—

(1) for cause, including fraud, dishonesty, incompetence, or gross mis-

management of the affairs of the debtor by current management, either before or after the commencement of the case, or similar cause, but not including the number of holders of securities of the debtor or the amount of assets or liabilities of the debtor; or ·

(2) if such appointment is in the interests of creditors, any equity security holders, and other interests of the estate, without regard to the number of holders of securities of the debtor or the amount of assets or liabilities of the debtor." ·

 Section 1104 creates a flexible standard for the appointment of a trustee which must ultimately be applied on a case by case basis. *See In re Eichorn*, 5 B.R. 755, 757 (Bankr.Ct.D.Mass.1980). The final decision as to whether to appoint a trustee rests within the sound discretion of the bankruptcy judge. *In the Matter of McCordi Corp.*, 6 B.R. 172, 177 (Bankr.Ct. S.D.N.Y.1980). Nevertheless, there is a strong presumption that the debtor in a Chapter 11 case should continue in control and possession of the business. *See, e.g., In re Garland Corp.*, 6 B.R. 456, 460 (Bankr.App.Panel D.Mass.1980); *Dardarian v. La Sherene, Inc.*, 3 B.R. 169, 174 (Bankr.Ct.N.D.Ga.1980). In *Midlantic National Bank v. Anchorage Boat Sales, Inc.*, 4 B.R. 635, 644–645 (Bankr.Ct.E.D.N. Y.1980), the bankruptcy court described the application of § 1104(a) as follows:

"In many cases, the appointment of a trustee may preclude an effective reorganization because of the substantial administrative expenses which must be paid by the debtor's estate. Accordingly, under subsection (a)(2), the Court may utilize its broad equity powers to engage in a cost-benefit analysis in order to determine whether the appointment of a trustee would be in the interest of creditors, equity security holders, and other interests of the estate."

Under subsection (a)(1), the Court's discretionary powers are more circumscribed. Here, the Court's discretion is limited to a determination of whether 'cause' exists for such appointment, and such 'cause' must be in the nature of 'fraud, dishonesty, incompetence, or gross mismanagement' of the debtor by current management, either before or after the commencement of the case. Since one would expect to find some degree of incompetence or mismanagement in most businesses which have been forced to seek the protections of chapter 11, the Court must find something more aggravated than simple mismanagement in order to appoint a trustee." (Citations omitted).

 After an extensive examination of the evidence presented in this case, the court concludes that the appointment of a trustee in the River Line, Inland and River Merchandising cases is warranted under either of the tests set forth in the provisions of 11 U.S.C. § 1104(a). The testimony is uncontradicted that all three of these debtor corporations have essentially ceased operations. River Line, which had 150 barges in operation in June of 1981, has surrendered all barges which were in its possession to their original owners, River Merchandising has not entered into any new transactions involving the buying or selling of freight contracts since the filing of its Chapter 11 petition, and Inland's operations have dwindled to the point that it presently only has one towboat working on the inland river system.

Nor do any of these three corporations possess sufficient assets to successfully reorganize at this time. The only assets of significance held by the three debtor corporations are certain pre-petition accounts receivable, which these corporations are currently trying to collect through litigation. The debtors-in-possession have offered no proof that these actions to collect pre-petition accounts receivable will be successful and, if so, whether enough funds will be generated to sustain a successful reorganization of these debtor corporations. In addition, the court would note that, while the Chapter 11 petitions of these debtor corporations were filed early in September of 1981, no plans of reorganization have as of

yet been submitted by the debtors-in-possession to this court.

Finally, the financial affairs of the three debtor corporations are in total disarray. John Miller, a certified public accountant who worked for J.W. Armstrong from March 9 to November 27, 1981, testified that the resources from these debtor corporations, together with the resources of numerous other corporations in which Armstrong held an ownership interest, were pooled together in one master account at the Hendersonville Citizens Bank. This financial arrangement resulted in frequent intercompany transfers and has produced considerable confusion as to the assets and liabilities of each individual debtor corporation.

These circumstances not only evidence gross mismanagement by the debtor corporations in question but also require the appointment of an independent trustee to unravel the financial status of these debtor corporations and to determine whether or not a successful reorganization of these debtor corporations is feasible. *See generally In re L.S. Good & Co.,* 8 B.R. 310, 314–315 (Bankr.Ct.N.D.W.Va.1980).

The court further finds that the interest of all parties would be best served by the joint administration of these estates pursuant to Rules 11–14 and 117(b) of the Federal Rules of Bankruptcy Procedure.[1] Rule 117(b), made applicable to Chapter 11 cases by Rule 11–14, provides in pertinent part:

"(b) *Cases Involving 2 or More Related Bankrupts.* If 2 or more petitions are pending in the same court by or against... (4) a bankrupt and an affiliate, the court may order a joint administration of the estates. Before making such an order the court shall give due consideration to the protection of creditors of the different estates against potential conflicts of interest."

The debtor corporations in the present case are certainly affiliates. 11 U.S.C.

§ 101(2) defines the term "affiliate" in relevant part as follows:

"(B) Corporations twenty percent or more of whose outstanding voting securities are directly or indirectly owned, controlled, or held with power to vote, by the debtor, *or by an entity that directly or indirectly owns, controls, or holds with power to vote, twenty percent or more of the outstanding voting securities of the debtor....*" (Emphasis supplied.)

■ Generally, an affiliate will include any entity that has a close relationship with the debtor. 2 COLLIER ON BANKRUPTCY ¶ 101.02, at 101–14 (15th ed. 1981). This broad definition of affiliate is designed primarily "to help the bankruptcy court to administer economically and efficiently different estates with substantial interests in common." *In re Brookhollow Associates,* 435 F.Supp. 763, 766 (D.Mass.1977) *aff'd* 575 F.2d 1003 (1st Cir.1978). In the present case, J.W. Armstrong owns 100% of Inland and is a 50% shareholder in both River Line and River Merchandising. Accordingly, all three of these debtor corporations are affiliates as defined by 11 U.S.C. § 101(2)(B).

■ The court will appoint Irwin A. Deutscher as trustee for River Line, Inland and River Merchandising. As the present trustee for H & S, Mr. Deutscher is familiar with the background of these cases. Furthermore, the appointment of a single trustee will be less costly and more beneficial to these estates due to the substantial inter-relation between these debtor corporations. *See In re International Oil Co.,* 427 F.2d 186, 187 (2nd Cir.1970); *Hassett v. McColley (In re O.P.M. Leasing Services, Inc.),* 16 B.R. 932, 8 B.C.D. 841, 845–846 (Bankr.Ct.S.D.N.Y.1982). Pursuant to Rule 210(d) of the Federal Rules of Bankruptcy Procedure, the court finds that Mr. Deutscher's position as trustee for H & S does not create any conflict of interest with his appointment as trustee for the three

---

**1.** The court does not consider at this time, because not raised, the issue of whether the evidence presented would justify the consolidation

of these bankruptcy estates. *See generally In re Vecco Construction Industries, Inc.,* 4 B.R. 407, 6 B.C.D. 461 (Bankr.Ct.E.D.Va.1980).

debtor corporations in question.[2] The mere fact that Mr. Deutscher is currently a trustee in a debtor corporation that is related to the three debtor corporations is not sufficient in and of itself to demonstrate the existence of any conflict of interest. The court will not on this factor alone presuppose that such a conflict of interest exists.

Accordingly, the court will enter an order providing for the joint administration of River Line, Inland, River Merchandising and H & S. The court will further order that Irwin A. Deutscher be designated trustee for these jointly administered estates. Since no party in interest has requested a trustee for River Management pursuant to 11 U.S.C. § 1104(a), the court will not at this time include River Management in the joint administration of the above-mentioned debtor corporations.

IT IS THEREFORE SO ORDERED.

2. Rule 210(d) provides:

"(d) *Potentional Conflicts of Interest.* Before approving the election or appointment of one trustee for estates being jointly administered as provided in subdivision (a) or (c) of this rule the court must be satisfied that the creditors of the different estates will not be prejudiced by conflicts of interest of the trustees.