In re James A. BURLEY and Elsie M. Burley.

B. H. BRINEY and Lucille M. Briney, Plaintiffs,

v.

James A. BURLEY and Elsie M. Burley, Defendants.

Bankruptcy No. LA 80–08761–RO.

United States Bankruptcy Court, C. D. California.

May 28, 1981.

Moneymaker & Morrison, Los Angeles, Cal., for plaintiffs.

John Owen Meyers, III, Pomona, Cal., for defendants.

## MEMORANDUM OPINION ON MOTION OF JUDGMENT CREDITOR TO VACATE THE ORDER ENTERING THE DISCHARGE OF THE DEBTOR.

ROBERT L. ORDIN, Bankruptcy Judge.

By motion filed on March 27, 1981, B. H. Briney and Lucille M. Briney (hereinafter "Brineys") seek an order from this court vacating the discharge of the debtors, entered on March 19, 1981. In support of that motion, the Brineys assert: (i) the debtors' discharges were entered as a result of clerical mistake, oversight, or omission; and (ii) the discharges should be vacated pursuant to Rule 924 of Bankruptcy Procedure, and F.R.Civ.P. 60(b)(1) and (6).

It is necessary to understand the facts of this dispute in some detail in order to analyze the rights of the parties and interface these facts and the jurisdiction and venue provisions of the Bankruptcy Reform Act. The moving papers, and documents filed in opposition to the motion, and the files and records of this case, reveal the following:

(1) On September 10, 1979, the Brineys obtained a judgment against the debtors in the State Court in Colorado.

(2) On August 29, 1980, the debtors filed a Chapter 7 case in the Central District of California. Brineys' judgment was scheduled and the Brineys received notice of the filing of the Chapter 7. The schedules reflect that the Brineys are the only unsecured creditors.

(3) All of the assets reflected in the schedules are claimed as exempt by the debtors.

(4) On October 1, 1980, the trustee filed his Report of Trustee in No-Asset Case, in the Chapter 7 case in California.

(5) On October 9, 1980, an order was made in the Chapter 7 case in California fixing: (i) November 26, 1980 as the Last Date to file complaints re dischargeability; and (ii) December 24, 1980 as the Last Date to file objections to discharge.

(6) On October 27, 1980, the Brineys' attorney, G. Barrett Swayne, whose law office is located in Arcadia, California, wrote a letter to the trustee in the debtors' case in which he stated: (i) that Swayne was the attorney for the Brineys; (ii) that Swayne had conducted a 205 examination with respect to transactions described in Swayne's letter; (iii) that the debtors had engaged in conduct which would bar their right to a discharge; (iv) that the trustee was requested to take appropriate action to bar the discharge of the debtors; and (v) the Last Date to file dischargeability litigation was November 26, 1980, and the Last Date to file objections to discharge was December 24, 1980.

(7) On November 26, 1980, Brineys, through Colorado counsel David R. DeMuro, whose offices are in Denver, Colorado, filed a complaint in the Bankruptcy Court in Colorado seeking (i) to establish the nondischargeability of their judgment; and (ii) to bar the debtors' discharge.

(8) On November 28, 1980, a copy of that complaint, mailed by the Brineys' Colorado lawyer, was received in the Clerk's Office in the Central District of California. The complaint bore a case number assigned by the Clerk of the Colorado court in accordance with Colorado procedures.

(9) On January 2, 1981, an order was made in the Bankruptcy Court in the Central District of California (i) fixing February 5, 1981 as the date for the Reaffirmation and Discharge hearing in the California Bankruptcy Court; and (ii) ordering debtors' attorney to serve a notice of said hearing by U. S. mail not less than 10 days before the hearing, on plaintiff and plaintiff's counsel in any dischargeability proceedings pending in debtors' Chapter 7 case.

(10) On January 6, 1981, debtors filed a motion in the Colorado Bankruptcy Court seeking to dismiss the Brineys' complaint or change the venue thereon to the Bankruptcy Court in California in which the Chapter 7 case was pending.

(11) On January 16, 1981, the Brineys filed an amended complaint in the Colorado Bankruptcy Court with respect to nondischargeability of their claim and objection to discharge.

(12) On January 26, 1981 the Bankruptcy Court in Colorado denied debtors' motion to dismiss or change venue. At that hearing, the judge was advised by counsel for the debtors and the Brineys that the reaffirmation and discharge hearing was set in the Bankruptcy Court in California on February 5, 1981.

(13) On February 5, 1981, the debtors filed an answer to the Brineys' complaint in the Colorado court.

(14) On February 5, 1981, the discharge hearing was held in debtors' case in the Central District of California. No pleading was filed on the Brineys' behalf nor was any appearance made by counsel for the Brineys at that hearing.

(15) On February 10, 1981, the Brineys' Colorado counsel wrote a letter to the Bankruptcy Court in the Central District of California requesting a delay of the entry of the discharge.

(16) On March 19, 1981, an order granting a discharge to each of the debtors was entered in the California Bankruptcy Court.

(17) On March 27, 1981, the Brineys filed the within motion.

The Brineys assert the following in support of their request:

(1) The Colorado Bankruptcy Court had jurisdiction to accept, file, and process the adversary proceeding objecting to the debtors' discharge, and seeking a determination of the dischargeability of the Brineys' claim against the debtors, despite the fact that the debtors' case was pending in the Bankruptcy Court in the Central District of California.

(2) The Colorado Bankruptcy Court was a proper court in which to file and try that adversary proceeding; i. e., was a court of proper venue.

(3) If the Colorado Bankruptcy Court *was not* a proper court in which to file and try Brineys' adversary proceeding (i. e., was a court of *improper* venue), the Colorado Bankruptcy Court was nevertheless authorized to retain and try that adversary proceeding under the venue provisions of the Bankruptcy Reform Act.

(4) The Bankruptcy Court as a court of equity is authorized to vacate the order of discharge on the grounds specified in F.R. Civ.P. 60(b).[1]

---

1. Made applicable to this proceeding by Rule 924 of the Rules of Bankruptcy Procedure. § 405(d) of Title IV of the Bankruptcy Reform Act makes these Rules applicable to cases under title 11 in the following language:

"(d) The rules prescribed under section 2075 of title 28 of the United States Code and in effect on September 30, 1979, shall apply to cases under title 11, to the extent not inconsistent with the amendments made by this

(5) The Bankruptcy Court should vacate the discharge under the circumstances here presented. '

Disposition of Brineys' contentions will require an analysis (i) of rules governing the exercise of equitable jurisdiction by the Bankruptcy Court; and (ii) of the jurisdiction and venue provisions of the Bankruptcy Court under the Bankruptcy Reform Act.

*The power of the bankruptcy court as a court of equity to vacate the discharge.*

While Brineys' motion seeks to vacate the discharge under 60(b)(1) and (6),[2] the reference to 60(b)(1) finds no support in the record. Accordingly, the motion will be dealt with solely on the basis of 60(b)(6).

 The power of a court of equity to vacate an order or decree is too well established to merit extended discussion.[3] That power is "inherent in the jurisdiction of the chancery"[4] and is explicitly defined in F.R. Civ.P. 60. The exercise of that power lies within the discretion of the trial court, guided by traditional principles of equity jurisprudence.[5] "In simple English, the language of the 'other reason' clause [60(b)(6)] ... vests power in courts adequate to enable them to vacate judgments whenever such action is appropriate to accomplish justice."[6]

 However, equity jurisdiction is as well *defined* and *limited* as that of a court of law.[7] It is not an unbridled or unfettered license to fashion relief as seems appropriate to the Chancellor.[8] The case at bar suggests at least two such limitations.

First, the power embodied in 60(b)(6) should be exercised only upon a showing that "extraordinary" circumstances existed which prevented the moving party from seeking relief through the usual channels.[9]

Second, the maxim "equity follows the law"[10] imports: (i) that in dealing with legal rights, equity adopts the applicable rules of law,[11] and (ii) that in dealing with equitable estates the court applies to them

Act, or with this Act, until such rules are repealed or superseded by rules prescribed and effective under such section, as amended by section 248 of this Act."

2. "Rule 60. Relief from Judgment or Order. (b) *Mistakes; Inadvertence; Excusable Neglect; Newly Discovered Evidence; Fraud, Etc.* On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; . . . (6) any other reason justifying relief from the operation of the judgment. . . ."

3. *State of Pennsylvania v. Wheeling & Belmont Bridge Co.*, 59 U.S. 421, 18 How. 421, 15 L.Ed. 435 (1855); 7 Moore's Federal Practice ¶ 60.–16[6] and cases cited at n. 1.

4. *United States v. Swift & Co.*, 286 U.S. 106, 114, 52 S.Ct. 460, 462, 76 L.Ed. 999 (1932).

5. *System Federation v. Wright*, 364 U.S. 642, 648, 81 S.Ct. 368, 371, 5 L.Ed.2d 349 (1961); *United States v. Swift & Co., supra*, 286 U.S. at 115, 52 S.Ct. at 462 (1932); *Safe Flight Instrument Corp. v. United Control*, 576 F.2d 1340 (9th Cir. 1978).

6. *Klapprott v. United States* (1948), 335 U.S. 601, at pp. 614, 615, 69 S.Ct. 384, at page 390, 93 L.Ed. 266.

7. *Rees v. Watertown*, 86 U.S. (19 Wall.) 107, 22 L.Ed. 72 (1874); *Heine v. The Board of Levee Commissioners*, 86 U.S. (19 Wall.) 655, 22 L.Ed. 223 (1874).

8. *United States v. Smelser*, 87 F.2d 799 (5th Cir. 1937); *Rees v. Watertown*, 86 U.S. (19 Wall.) 107, 22 L.Ed. 72 (1874); *Heine v. The Board of Levee Commissioners*, 86 U.S. (19 Wall.) 655, 22 L.Ed. 223 (1874).

9. *Ackermann v. United States* (1950), 340 U.S. 193 at p. 202, 71 S.Ct. 209, 213, 95 L.Ed. 207; *See also James Blackstone Mem. Ass'n v. Gulf, Mobile & O.R.R. Co.*, 28 F.R.D. 385 (1961 D.Conn.). Brineys learned of the Reaffirmation and Discharge hearing no later than January 26, 1981. No effort was made by or on behalf of the Brineys to notice a motion or file a pleading or appear at the discharge hearing to prevent or delay the entry of the order of discharge.

10. Cases Tempore Talbot, English Chancery 52; *Heine v. The Board of Levee Commissioners*, 86 U.S. (19 Wall.) 655, 22 L.Ed. 223 (1874); *Rees v. Watertown*, 86 U.S. (19 Wall.) 107, 22 L.Ed. 72 (1874); *30 C.J.S. Equity* § 1, p. 780, and § 103, p. 1067.

11. *Id.*

the same rules which govern legal estates.[12] Whenever the rights of the parties are defined and established by law, and whenever the court is dealing with a legal estate, and there is a direct rule of law governing the case, the court is as much bound by it as a court of law would be if the case were pending there.[13] Neither the failure of legal remedy nor the hardship of the case allows a court of equity to administer abstract justice at the expense of well settled principles.[14] Equity is a complex system of established law, and is not the chancellor's sense of moral right or his sense of what is just and equal.[15] The equitable conscience of the court is not measured by the length of the chancellor's foot.[16] The plain mandate of the law cannot be set aside because of considerations which may appeal to a referee or judge as falling within general principles of equity jurisprudence, nor can rules of equity be intruded in matters that are fully covered by positive statute.[17]

The Brineys seek equitable relief to enable them to vacate the discharge and proceed with their adversary proceeding in the Bankruptcy Court in Colorado. As their legal right to proceed in that court is of considerable importance in determining the propriety of the requested equitable relief, an examination of their legal position in this regard will be dealt with first in this opinion.

### Jurisdiction of the Colorado Bankruptcy Court Over the Brineys' Adversary Proceeding.

A primary consideration in drafting the Bankruptcy Reform Act was the elimination of the "summary-plenary jurisdiction" syndrome which plagued the bench and bar in the administration of the Bankruptcy Act of 1898.[18] The creation of a bankruptcy court with "pervasive jurisdiction" was an essential ingredient in the new law.[19] However, a bankruptcy court with "pervasive jurisdiction" could be expected to exercise the judicial power of the United States in litigation previously tried in Article III courts. This posed a constitutional problem of considerable dimensions, a fact well understood by the drafters of the statute.[20] The solution offered by Congress took the form of 28 U.S.C. § 151[21] and 28 U.S.C. § 1471.[22] These provisions define the new Bankruptcy Court, and the jurisdiction of that court.

Reference must be made to § 1471(a), (b) and (c) to understand the technique used to create the new Bankruptcy Court with "pervasive jurisdiction."[23] Section 1471(a)

12. *Id.*

13. *Id.*

14. *Id.*

15. *Id.*

16. Or the referee's foot either!
 "The attempt of the Referee to do equity, which was affirmed by the District Court, works out about as well as such attempts usually do. Before a tribunal can administer absolute justice, it should be in possession of attributes of omniscience and omnipotence. These are not usually possessed by referees. The measure of the Referee's foot is not the standard of adjudication as that of the Chancellor formerly was." *Colonial Trust Co. v. Goggin*, 230 F.2d 634, 636 (9th Cir. 1955).

17. *United States v. Killoren*, 119 F.2d 364, 366 (8th Cir.); *Lass v. Eliassen*, 94 Cal.App. 175, 270 P. 745; and authorities referred to in fn. 10, *supra*.

18. *House Report 95–595*, Ch. 1, "Constitutional Bankruptcy Courts," p. 7; *Report of The Com-* *mission on the Bankruptcy Laws of the United States*, Ch. 4, p. 85. The Bankruptcy Act of 1898 will hereafter sometimes be referred to in this opinion as the "Act."

19. *Id.*

20. *Id.*

21. 28 U.S.C. § 151 creates the Bankruptcy Court in each judicial district "as an adjunct to the District for such district. This section does not become effective until April 1, 1984.

22. Made effective during transition by Title IV of the Bankruptcy Reform Act, § 405(b).

23. *28 U.S.C. § 1471: JURISDICTION*:
 "(a) Except as provided in subsection (b) of this section, the district courts shall have original and exclusive jurisdiction of all cases under title 11.
 "(b) Notwithstanding any Act of Congress that confers exclusive jurisdiction on a court or courts other than the district courts, the district courts shall have original but not exclusive

grants original and exclusive jurisdiction of all "cases" under title 11 to the District Court. Section 1471(b) grants original but not exclusive jurisdiction to the District Court over "civil proceedings" arising under title 11.[24]

The distinction between "cases" and "proceedings" is of great importance and will be referred to elsewhere in this opinion. Briefly, the "case" includes all matters of administration and all controversies determinable by the court of bankruptcy. The term "case" is used to distinguish the total process of the adjudication of bankruptcy from the various "proceedings" which constitute elements of that process.[25]

The effect of § 1471(a) and (b) is to vest jurisdiction in the District Court over "cases" and "proceedings" cognizable to the bankruptcy process. All of the jurisdiction over "cases" and "proceedings" vested in the District Court by § 1471(a) and (b) shall be exercised by the Bankruptcy Court, by the express terms of § 1471(c). The intended result of § 1471 is to create a Bankruptcy Court with pervasive jurisdiction which can withstand constitutional challenge based upon its exercise of the judicial power of the United States. The section speaks in terms of and deals with jurisdiction: the basic power of the new Bankruptcy Court to entertain and dispose of the "cases" and "proceedings" described in § 1471(a) and (b). The scheme of § 1471 is to create jurisdiction in the primary sense to deal with "cases" and "proceedings."

The clarity and precision of this jurisdictional grant are clouded somewhat by a phrase in § 1471(c) which contains the words "for the district in which a case under title 11 is commenced." That phrase appears in § 1471(c) in the following context:

"The Bankruptcy Court *for the district in which a case under title 11 is commenced* shall exercise all the jurisdiction conferred by this section on the District Courts." (Emphasis added.)

It is argued by the debtors that (i) the jurisdiction conferred on the Bankruptcy Court under § 1471(c) is only conferred on the Bankruptcy Court for the district in which the "case" is commenced; and (ii) no other bankruptcy court may exercise jurisdiction over the "case" or any "proceedings" arising in or related to the "case." If that is the meaning of the statute, the Bankruptcy Court in Colorado had no jurisdiction to accept, file or process Brineys' adversary proceeding objecting to the debtors' discharge and seeking a determination of the dischargeability of Brineys' judgment.

This phase of the dispute is reminiscent of a similar debate over the impact and meaning of § 2(a)(1) of the Bankruptcy Act of 1898. On its face, that statute invested jurisdiction in courts of bankruptcy "within their respective territorial limits . . . to (1) adjudge persons bankrupt . . ." whose principal place of business, residence or domicile was located within the territorial jurisdiction of the bankruptcy court as provided in the statute.[26] Serious dispute arose over

jurisdiction of all civil proceedings arising under title 11 or arising in or related to cases under title 11.

"(c) The bankruptcy court for the district in which a case under title 11 is commenced shall exercise all of the jurisdiction conferred by this section on the district courts."

24. "[A]ll civil proceedings arising under title 11 or arising in or related to cases under title 11." § 1471(b).

25. Rules of Bankruptcy Procedure, Rule 101; and Advisory Committee Notes.

26. Section 2(a) of the Bankruptcy Act, as amended, 11 U.S.C.A. § 11, in part provides: "§ 2. CREATION OF COURTS OF BANKRUPTCY AND THEIR JURISDICTION. a.

The courts of the United States hereinbefore defined as courts of bankruptcy are hereby created courts of bankruptcy and are hereby invested, within their respective territorial limits as now established or as they may be hereafter changed, with such jurisdiction at law and in equity as will enable them to exercise original jurisdiction in proceedings under this Act, in vacation, in chambers, and during their respective terms, as they are now or may be hereafter held, to— "(1) Adjudge persons bankrupt who have had their principal place of business, resided, or had their domicile within their respective territorial jurisdictions for the preceding six months, or for a longer portion of the preceding six months than in any other jurisdiction, or who do not have their principal place of

whether this section referred to jurisdiction or venue.

Prior to 1952, the weight of authority held that the provisions of § 2(a)(1) of the Act dealt with jurisdiction rather than venue.[27] However, the 1952 amendment to B.A. § 32 permitted the judge to transfer the case to the court in another district if the interest of the parties would best be served by such a transfer; and if venue of the case was laid in the wrong court, the judge could, in the interest of justice, retain it or transfer it to any other court in which it could have been brought.[28] Accordingly, under B.A. § 32 a bankruptcy court could exercise jurisdiction over the "case", regardless of the bankrupt's residence, domicile or place of business, and could retain or transfer the case in "the interest of justice" or the interests of the parties.[29] That was not compatible with the view that § 2(a)(1) was jurisdictional.

Reason and logic dictated that in enacting the 1952 amendments to § 32, Congress implicitly viewed the provisions of § 2(a)(1) as relating to venue rather than jurisdiction.[30] Otherwise, how could there be "wrong venue" for § 32(b) to remedy? Furthermore, if one of the alternative requirements of § 2(a)(1) must be present in order to empower the court to entertain a bankruptcy proceeding, the absence thereof would leave the court no alternative but to dismiss.[31] Such a result cannot be squared

with the permissive language of § 32(b) whereby the judge, in a wrong venue situation, "*may*, in the interest of justice, transfer the case to any other court of bankruptcy in which it could have been brought." (Emphasis added.)[32]

Moreover, the power to retain or transfer was based on the theory of consent or waiver,[33] concepts which cannot be utilized to fix or determine subject matter jurisdiction!

"The jurisdiction of federal courts—their power to adjudicate—is a grant of authority to them by Congress and thus beyond the scope of litigants to confer. But the locality of a lawsuit—the place where judicial authority may be exercised—though defined by legislation relates to the convenience of litigants and as such is subject to their disposition. This basic difference between the court's power and the litigants' convenience is historic in the federal courts. After a period of confusing deviation it was firmly established...."[34]

After the 1952 amendments, court decisions laid to rest any controversy as to whether § 2(a)(1) set up jurisdictional requirements without which the court was powerless to act, or related to venue, which the parties could waive. Since that time the courts have consistently held that § 2(a)(1) of the Bankruptcy Act, notwithstanding its language and location in the

---

business, reside, or have their domicile within the United States, but have property within their jurisdiction, or in any cases transferred to them pursuant to this Act; * * * "

**27.** *In re Martinez*, 241 F.2d 345 (10th Cir. 1957); *Finn v. Carolina Portland Cement Co.*, 5 Cir., 232 F. 815; *In re San Antonio Land & Irrigation Co.*, D.C.S.D.N.Y., 228 F. 984; *In re American & British Mfg. Corp.*, D.C.Conn., 300 F. 839; *In re Mitchell*, 2 Cir., 219 F. 690; *In re Garneau*, 7 Cir., 127 F. 677; *In re Guanacevi Tunnel Co.*, 2 Cir., 201 F. 316.

**28.** B.A. § 32; *In re Eatherton*, 271 F.2d 199 (8th Cir. 1959); House Report No. 2320 on S. 2234, 82nd Cong., 2d Sess. 1952.

**29.** *In re Martinez*, 241 F.2d 345 (10th Cir. 1957); *In re Eatherton*, 271 F.2d 199 (8th Cir. 1959); *Bass v. Hutchins*, 417 F.2d 692 (5th Cir. 1969).

**30.** *Id.*

**31.** *Id.*

**32.** *Id.*

**33.** *Id.*

**34.** *In re Martinez*, 241 F.2d 345 (10th Cir. 1957). *Neirbo Co. v. Bethlehem Shipbuilding Corp., Ltd.*, 308 U.S. 165, 167, 168, 60 S.Ct. 153, 154, 84 L.Ed. 167; *General Investment Co. v. Lake Shore Ry. Co.*, 260 U.S. 261, 43 S.Ct. 106, 67 L.Ed. 244, and *Lee v. Chesapeake & Ohio Ry. Co.*, 260 U.S. 653, 43 S.Ct. 230, 67 L.Ed. 443, overruling *Ex parte Wisner*, 203 U.S. 449, 27 S.Ct. 150, 51 L.Ed. 264, and qualifying *In re Moore*, 209 U.S. 490, 28 S.Ct. 585, 706, 52 L.Ed. 904.

Act, is a true venue provision and is not jurisdiction confining or defining.[35] For example:

"The 1952 changes in § 32 of the Bankruptcy Act * * * have tended to increase the feeling that the statutory provisions as to institution of bankruptcy proceedings in the district court where the alleged bankrupt has his residence, domicile, or place of business relate to proper venue rather than to jurisdiction to entertain the proceedings." [36]

" * * * Congress intended with certainty, that the residence, domicile or place of business requirements of § 2, sub. a(1) go solely to venue, and § 32, sub. b was designed to clothe a court of bankruptcy with the same authority in a wrong venue situation, as that possessed by the United States District Courts with respect to other litigation in which venue is laid in the wrong division or district with this significant exception": [37] A district court, in which a case is filed laying wrong venue "*shall dismiss,* or if it be in the interest of justice, *transfer* such case to any district or division in which it could have been brought" [38] (emphasis added); whereas, under § 32, sub. b, the court *may* transfer or retain; it is not empowered to dismiss.[39]

"We are and ought to be reluctant to find a vise-like jurisdictional grip by a single judicial district" and "conclude that precedent, Congressional intent, and a much desired judicial flexibility all point to the relaxed venue as opposed to the strict jurisdictional interpretation of § 2(a)(1) of the Act." [40]

Accordingly, the "jurisdictional view" of the meaning of B.A. 2(a)(1) was rejected in favor of an analysis which treated the section as dealing with *both jurisdiction and venue*:

It is our conclusion that § 2 first grants substantive jurisdiction in bankruptcy, that is, the power to adjudicate, in the Federal district courts, and then fixes the territorial jurisdictions in which such judicial power may be exercised. We think only by such construction can the provisions of the amendments to § 32 be reconciled with the provisions of § 2, ... [41]

The parallel between the jurisdiction, venue, and transfer provisions of the 1898 Act [§ 2(a)(1), and § 32(a), (b), and (c)] of the Reform Act [§ 1471(c), § 1472, § 1473, § 1475, and § 1477(a)] is unmistakable. The jurisdictional grant in each statute, couched in terms of jurisdiction, has strong overtones of venue.

The provisions of the Act were construed together to read the language of § 2(a)(1) to include *both* a grant of jurisdiction *and* a definition of the proper venue in which that jurisdiction should be exercised. § 1471(c) and the venue provisions of the Reform Act suggest a similar analysis and construction. Like its predecessor, the language of § 1471(c) includes *both* a grant of jurisdiction *and* a definition of proper venue. The language "for the district in which a case under title 11 is commenced" focuses on the particular bankruptcy court which will exercise the jurisdiction vested in the Bankruptcy Court under § 1471(c). The phrase neither enlarges nor diminishes the jurisdiction conferred on the new bankruptcy court; it merely directs traffic to the proper court. The conclusions in *Martinez, Eatherton* and *Bass*, which demonstrate that the liberal and flexible venue provisions of § 32 are inconsistent and incompatible with

**35.** *Bass v. Hutchins,* 417 F.2d 692 (5th Cir. 1969); *In re Bankers Trust,* 403 F.2d 16 (7th Cir. 1968); *Saper v. Long,* 131 F.Supp. 795 (S.D.N.Y.); *Fada Radio and Electronic Co.,* 132 F.Supp. 89 (S.D.N.Y.) 1 Collier § 2.14 (14th Ed.); *Martinez, supra.*

**36.** *Bass v. Hutchins, supra.*

**37.** *Bass v. Hutchins,* 417 F.2d 692, 695 (5th Cir. 1969); *In re Eatherton,* 271 F.2d 199, 204 (8th Cir.1959).

**38.** 28 U.S.C. 1406(a).

**39.** *Id.*

**40.** *Bass v. Hutchins, supra.*

**41.** *In re Martinez,* 241 F.2d 345, 349 (10th Cir. 1957); *See also In re Eatherton,* 271 F.2d 199 (8th Cir. 1959); *Bass v. Hutchins,* 417 F.2d 692 (5th Cir. 1969).

a strictly jurisdictional view of § 2(a)(1) apply with equal force and reason to the interaction and relationship between § 1471(c) and the venue provisions contained in § 1473, § 1475 and § 1477(a). The provisions in § 1475 and § 1477(a) for transfer of venue, and retention of the case in a court of improper venue, are incomprehensible if the bankruptcy court "for the district in which a case under title 11 is commenced" is the only bankruptcy court with the jurisdiction derived from § 1471(a) and (b). A court must have jurisdiction or it cannot entertain a case or proceeding *at all*; a court which can entertain a case or proceeding must, by definition, be a court with jurisdiction.

■ For the foregoing reasons, the Brineys' legal position must be sustained with respect to the jurisdiction of the Colorado Bankruptcy Court: that Court had jurisdiction to accept, file, and process the adversary proceeding objecting to debtors' discharge and seeking a determination of the dischargeability of Brineys' judgment, notwithstanding the pendency of the Chapter 7 case before the Bankruptcy Court in another district, i. e., the Central District of California.

*Venue in the Colorado Court*

An analysis of the proper venue for Brineys' adversary proceeding requires an examination of the venue rules in the Reform Act. These venue rules relate to "cases" and to "proceedings" and will be analyzed separately.

(1) *Venue rules applicable to "cases."*

(a) The rules of venue applicable to "cases" may be viewed as an eclectic effort to distill and codify the rules and wisdom derived from experience under the prior Act. They are set forth in § 1471(c), § 1472, § 1475, and § 1477(a).

The basic rule for venue of "cases" is § 1472.[42] A "case" may be commenced in the bankruptcy court for the district in which the domicile, residence, principal place of business or principal assets of the debtor or alleged debtor have been located for 180 days immediately preceding the filing, or the longer portion of such 180-day period than the domicile, residence, place of business or assets were located in any other district. § 1472(2) provides an alternative basis of venue for the "case": the district in which a "case" is pending concerning an affiliate, general partner or partnership of the debtor or alleged debtor.

The "venue" phrase in § 1471(c), "the district in which a case under title 11 is commenced," has little effect on the proper venue for a "case." It merely identifies the "home" court as the court in which the "case" is filed, pursuant to § 1472. The most significant impact of the "venue" phrase relates to the venue of "proceedings," dealt with hereafter in this opinion.

Change of venue for "cases" is provided in § 1475,[43] which permits the transfer of a "case" to a bankruptcy court for another district, "in the interest of justice and for the convenience of the parties." The evils of rigid, formulistic rules of venue which led to the 1952 amendments to B.A. § 32[44]

**42.** *§ 1472. Venue of cases under title 11*:
"Except as provided in section 1474 of this title, a case under title 11 may be commenced in the bankruptcy court for a district—
"(1) in which the domicile, residence, principal place of business, in the United States, or principal assets, in the United States, of the person or entity that is the subject of such case have been located for the 180 days immediately preceding such commencement, or for a longer portion of such 180-day period than the domicile, residence, principal place of business, in the United States, or principal assets, in the United States, of such person were located in any other district; or (2) in

which there is pending a case under title 11 concerning such person's affiliate, general partner, or partnership."

**43.** *§ 1475. Change of venue*:
"A bankruptcy court may transfer a case under title 11 or a proceeding arising under or related to such a case to a bankruptcy court for another district, in the interest of justice and for the convenience of the parties."

**44.** The "vise-like jurisdictional grip by a single judicial district" deplored by the court in *Bass v. Hutchins*, 417 F.2d 692 (5th Cir. 1969), and *In re Eatherton*, 271 F.2d 199 (8th Cir. 1959).

were not forgotten by the drafters of the Reform Act. The flexible and liberal rules for transfer or retention of "cases" in B.A. § 32 and Rule 116 were adopted in § 1477. Whether venue is proper or improper, the court can retain or transfer the "case" "in the interest of justice and for the convenience of the parties." Rule 116(c) supplements these rules and deals with a situation not provided for in the venue provisions of the new law: multiple petitions filed in different districts by or against the same debtor. Rule 116(c) requires the court in which the first petition is filed to determine which court shall proceed with the "case." That determination will be based upon "the interest of justice" and "the convenience of the parties." The processing of other petitions is stayed until this determination is made by the court in which the first petition is filed. "Thereafter, all courts in which petitions have been filed shall proceed in accordance with" that determination.

These venue provisions,[45] in the aggregate, establish a clear and definitive design for determining the venue of "cases" under the Reform Act: (i) § 1472 describes the court of proper venue; (ii) § 1475 provides for transfer of venue; (iii) § 1477(a) embod-ies the rule of "maximum flexibility" to retain or transfer a "case" filed in the wrong court; and (iv) Rule 116(c) sets forth the procedure where multiple "cases" are filed by or against the same debtor.

### (2) Venue rules applicable to "proceedings"

Analysis of the venue rules for "proceedings" under the Reform Act requires some understanding of the derivation, meaning and significance of the term "proceedings." Predictably, this requires a review of prior law, and the prior Act.

#### The Act

The term "proceedings" as it appeared in the Act was not always used with the same meaning. It often appeared as part of the phrase "proceedings under this Act" and referred variously to (i) the entire "proceeding" related to the administration of the estate, i. e., the whole "proceeding,"[46] and (ii) to steps routinely performed in the course of administration of the estate,[47] and (iii) to controversies arising with respect thereto or over property in possession of the court.[48] The bankruptcy court had exclusive jurisdiction over such "proceedings."

---

**45.** 28 U.S.C. § 1474 dealing with the venue of "cases" ancillary to foreign "proceedings" is so far outside the scope of the matters dealt with in this opinion that no effort will be made to analyze its impact.

**46.** *2(a)*, which conferred "original jurisdiction in proceedings under this Act,"; *23(b)*, which places the venue of suits by the trustee or receiver in courts where such suits could have been brought "if proceedings under this Act" had not been instituted; *2(a)(20)*, which provided for ancillary jurisdiction, "in aid of a receiver or trustee appointed in any bankruptcy proceedings pending in any other court;" *2(a)(21)* which refers to "proceedings under section 77 and Chapters X and XII of this Act"; *23(a)*, wherein the term "such proceedings" is used to refer to the whole proceeding.

**47.** Without attempting an exclusive list, these include: the filing and amending of bankruptcy schedules and statements of affairs; the examination of debtors and others in aid of administration of the case; the appointment and removal of trustees and receivers and their counsel; the filing of claims and hearing objections thereto; the setting aside of exemptions and the hearing of disputes thereon; determinations with respect to dischargeability of claims and objections to discharge; the reduction of the assets to cash and the sale of assets; the fixing of compensation and expenses of trustees, receivers and attorneys; the abandonment of assets; distributions and the determination of priorities in distribution.

**48.** Another type of controversy was known to the Act: "controversies at law and in equity" between the trustee or receiver and adverse claimants, relating to rights or property *not* in possession of the court, and over which the bankruptcy court generally did not have jurisdiction. *B.A. § 23(a)*; *2 Collier on Bankruptcy*, 14th Ed., § 23.03, pp. 444–447, distinguishing between "proceedings under this Act" and "controversies at law and in equity." The jurisdictional distinction between "proceedings under this Act" and "controversies at law and in equity" was a primary characteristic of the Act and practice under the Act. For the purpose of this discussion, the sophistication and complexities of "summary" jurisdiction under the Act, the concepts of "possession" and "consent," and the differences in jurisdiction of

It would be difficult to exaggerate the importance to the bankruptcy process of "proceedings" related to the administration of the estate and controversies arising in connection therewith. The jurisdiction vested in the bankruptcy court under the Act was largely measured by the nature and scope of the functions and duties of the court incident to the processing of such "proceedings." The endless conflict over jurisdiction under the Act had little to do with jurisdiction over "proceedings".[49] Jurisdiction over these matters did not depend on statutory authorization; it existed by reason of the court's possession of property and the duty to administer it,[50] and was exclusive of the jurisdiction of other courts.[51] "The administration and distribution of the property of bankrupts is a proceeding in equity, and when authorized by Act of Congress it becomes a branch of equity jurisprudence."[52] Property in the custody of a court of equity for administration requires the exercise of jurisdiction to inquire and determine the lawful owners, and to determine disputes with respect thereto.[53] This "is a power inherent in every court of equity, incidental and indispensible to the authority to administer the property in its possession and distribute its proceeds."[54] The court charged with the duty to administer the "case" must, of necessity, possess and exercise the power necessary to perform these functions. Exclu-

sive jurisdiction was born of that necessity and measured by that need. The significance of that power, in the case at bar, lies in the subject matter to which that power was addressed; the recognition that such "proceedings" were integral to the function of the bankruptcy process and that the court in which the "case" was pending was vested with exclusive jurisdiction to exercise that power.

In this context, the venue provisions of the Act are revealing. The Act *did not contain* venue rules for "proceedings" within the exclusive jurisdiction of the bankruptcy court. The venue provisions in the Act related only to (i) the entire bankruptcy "proceedings"[55] and (ii) "controversies at law or in equity" between the trustee or receiver and adverse claimants.[56] Until the adoption of the Rules of Bankruptcy Procedure, specifically Rule 782,[57] there was not even a provision for *change of venue* for such "proceedings."

This was not an oversight; the reason was clear: the bankruptcy court charged with the responsibility to administer the estate was intended to exercise the jurisdiction necessary to perform its functions; *that* court resolved disputes arising in such "proceedings"; *that* court could transfer venue "in the interest of justice and for the convenience of the parties." after the adoption of Rule 782. Wisdom borne of the

---

the court in straight bankruptcy, compared to Chapters X, XI, and XII, will be disregarded.

49. *2 Collier on Bankruptcy*, 14th Ed., ¶ 23.03.

50. *Wabash R. Co. v. Adelbert College*, 208 U.S. 38, 28 S.Ct. 182, 52 L.Ed. 379; *United States Fidelity & Guaranty Co. v. Bray*, 225 U.S. 205, 32 S.Ct. 620, 56 L.Ed. 1055; *Chauncey v. Dyke Bros.*, 9 Am.B.R. 444, 119 Fed. 1 (CCA); *Bardes v. Hawarden Bank*, 178 U.S. 524, 20 S.Ct. 1000, 44 L.Ed. 1175. In *Wabash R. Co. v. Adelbert College*, the Court put the matter thus: "Where a court of competent jurisdiction has taken property into its possession, through its officers, the property is thereby withdrawn from the jurisdiction of all other courts; the court with possession can hear and determine all questions respecting title, possession or control of the property."

51. *Id.*

52. *Id.*

53. *Id.*

54. *Id.*

55. Venue over the entire "proceeding" (now called the "case"—Rule 101) was provided in B.A. § 2(a) and § 32, later amplified and supplemented by Rule 116.

56. B.A. § 23(b); *Yorke v. Frank*, 295 F.2d 580 (7th Cir. 1961); *Burnham v. Todd*, 139 F.2d 338 (5th Cir. 1944).

57. Rule 782 permits the transfer of an adversary proceeding to a court in another district "in the interest of justice and for convenience of the parties." With leave of court, Rule 782 can be applied to any contested matter; Rule 914.

necessity to administer the estate in the court in which the case is pending precluded fragmentation of *jurisdiction* or *venue* under the Act with respect to such "proceedings." [58]

*The Rules*

The Rules of Bankruptcy Procedure introduced changes in terminology in bankruptcy administration. Under the Rules, the filing of the petition initiates a bankruptcy "case." [59] That term "embraces all the controversies determinable by the court of bankruptcy *and* all matters of administration arising during the pendency of the case." (Emphasis added.) [60] It was intended thereby to distinguish the total "bankruptcy case" from "the various proceedings which constitute elements of the bankruptcy process." [61]

The term "proceedings" is used in the Rules to refer to (i) litigated matters arising within a case during the course of administration of an estate; [62] classified as "adversary proceedings" [63] [defined in Rule 701(1) through (7)] and initiated by complaint, [64] or contested matters [65] initiated by motion; [66] and (ii) to administrative matters of a nonadversary nature. "Many proceedings in a bankruptcy case are purely administrative, involving no adverse parties and requiring none of the formalities and safeguards of notice and hearing characteristic of civil litigation." [67] Such "proceedings" may be initiated by application. [68] The rules prescribe the procedure for both types of "proceedings": i. e., (i) controversies within the court's jurisdiction, and (ii) all phases of administration not involving a controversy. [69]

■ However, the Rules do not extend the subject matter jurisdiction of courts of bankruptcy. [70] The limited jurisdiction of the court under the Act and the line separating summary "proceedings" from plenary "proceedings" retain their significance. [71] The rules do not apply to actions not within the jurisdiction of the bankruptcy court and which are commenced in nonbankruptcy courts. [72] In many instances, however, the "plenary" actions (for a variety of reasons not relevant to this discussion) are commenced and processed in the bankruptcy court. The term "adversary proceedings" is

**58.** When assets were beyond the reach of the court in which the case was pending, resort was had to 2(a)(20). Under 2(a)(20), ancillary jurisdiction could be exercised in ancillary proceedings in another district *in aid of the court of original jurisdiction* with respect to the supervision of the collection and reduction to cash of assets in the ancillary district, the determination and payment of liens thereon and the payment of expenses of administration. H.R. 12889, 74th Cong., 2d Sess. (1936), 13. The jurisdiction was such as the court of original jurisdiction would have had if it had territorial jurisdiction. A trustee or receiver wishing to invoke ancillary jurisdiction in aid of administration applied to the primary court for authority to do so. 1 Collier on Bankruptcy, 14th Ed., ¶ 2.72 to 2.76, pp. 385–390.7.

**59.** Rule 101 and Advisory Committee's Notes.

**60.** *Id*; see also Rule 1, and Advisory Committee Notes.

**61.** Rule 101, and Comment, 1976 Collier Pamphlet Edition of Bankruptcy Act.

**62.** Rule 101, Advisory Committee's Notes.

**63.** Rules, Part VII, Rule 701.

**64.** Rule 703.

**65.** Rule 914.

**66.** Rules 914, 901(9).

**67.** Rule 901(4), Advisory Committee's Notes.

**68.** Rule 901(4), and Advisory Committee's Notes.

**69.** Advisory Committee's Introductory Note to the Preliminary Draft of the Bankruptcy Rules; 1976 Collier Pamphlet Edition of Bankruptcy Act and Rules, p. 752.

**70.** Rule 928.

**71.** Advisory Committee's Introductory Note to the preliminary Draft of the Bankruptcy Rules; 1976 Collier Pamphlet Edition of Bankruptcy Act and Rules, p. 754.

**72.** Rule 1 and Advisory Committee Notes; Rule 701, and Advisory Committee Notes. Procedure in such actions is governed by the Federal Rules of Civil Procedure when brought in United States district courts and by applicable State rules of civil procedure when brought in State courts.

used to describe such actions,[73] as well as disputes arising in connection with routine administration of bankrupts' estates, and over which the bankruptcy court enjoys exclusive jurisdiction.[74] To summarize, the term "proceedings" as used in the Rules includes: (i) administrative matters of a nonadversary nature; and (ii) disputes relating to matters of administration or with respect to property in the court's possession; and (iii) "controversies at law and in equity" (i. e., plenary actions) when tried in the bankruptcy court.

*The Reform Act*

The expanded jurisdiction of the bankruptcy court under the Reform Act eliminates the jurisdictional distinction between "proceedings" within the court's jurisdiction and "proceedings" outside the court's jurisdiction. Under the Reform Act, all "proceedings" are within the jurisdiction of the bankruptcy court.[75] Nevertheless, the term "proceedings" has a more limited meaning in the Reform Act. The Legislative History states that "proceeding" is used to describe "contested matters," "adversary proceedings," "plenary actions," and "disputes relating to administrative matters in a bankruptcy case."[76] The same legislative history, however, at page 446, U.S.Code Cong. & Admin.News 1978, p. 6402, states that venue rules *do not apply* to "administrative matters," and that "the bankruptcy court in which the case is filed *will hear these matters.*" (Emphasis added.) The venue rules in § 1473, § 1475, and § 1477

refer to "proceedings." If these venue rules do not apply to administrative matters of a nonadversary character, the term "proceedings" is used in a more restrictive sense than under the Act or the Rules. The exclusion of administrative matters of a nonadversary character from the term "proceedings," redefines and limits the meaning of that term to *litigation* previously referred to under the Rules and Act as "contested matters," "adversary proceedings," "plenary actions" and "disputes related to administrative matters."

In analyzing the venue provisions of the Reform Act dealing with "proceedings," one must bear in mind (i) this development in the meaning of the term "proceedings" and (ii) the abolition in the Reform Act of the former limitations on the jurisdiction of the bankruptcy court. These venue rules are contained in the following sections: § 1471(c) (the "venue phrase" in the grant of jurisdiction to the bankruptcy court); § 1473 entitled "Venue of Proceedings Arising Under or Related to Cases Under Title 11"; § 1475 entitled "Change of Venue"; and § 1477(a) relating to the cure or waiver of defects in venue.

*§ 1471(c)—"The Venue Phrase"*

This section establishes a basic rule of "home" court venue for "proceedings" in the bankruptcy court in "the district in which the case under title 11 is commenced." Venue for the filing of the "case" is prescribed in § 1472. Once the "case" is filed, § 1471(c) identifies the bank-

---

**73.** For example, R 701(1), Complaint to Recover Money or Property.

**74.** Rule 701(3), Sale of Property Free of a Lien or Other Interest for Which the Holder Can be Compelled to Take a Money Satisfaction; 701(4), To Object to or Revoke a Discharge; 701(7) To Determine the Dischargeability of a Debt.

**75.** If they are "proceedings arising under title 11 or arising in or related to cases under title 11."

**76.** The Legislative History, H.R. 95–595, p. 445, U.S.Code Cong. & Admin.News 1978, pp. 5787, 6400, states the matter as follows:

"The jurisdiction granted is of all proceedings arising under title 11 or arising under or

related to a case under title 11. The bill uses the term 'proceeding' instead of the current 'matters and proceedings' found in the Bankruptcy Act and Rules. The change is intended to conform the terminology of title 28, under which anything that occurs within a case is a proceeding. *Thus, proceeding here is used in its broadest sense, and would encompass what are now called contested matters, adversary proceedings, and plenary actions under the current bankruptcy law. It also includes any disputes related to administrative matters in a bankruptcy case.*" (Emphasis added.)

To the same effect, see S.R.95–989, pp. 153–154.

ruptcy court of proper venue for "proceedings", subject to the other venue provisions in the Reform Act: § 1473(a) through (e), § 1475, and § 1477(a).

### § 1473—Venue of "Proceedings"

This section has five subdivisions. Its provisions must be scrutinized with great care.

Subdivision (a)[77] contains the general rule for the venue of "proceedings" in accordance with the "venue phrase" in § 1471(c). "Proceedings" are commenced in the bankruptcy court in which the case is pending. However, this rule of "home" court venue is expressly made inapplicable (i) to "proceedings" within § 1473(b), suits for money or property of less than $1,000 and consumer debts of less than $5,000, and (ii) to "proceedings" within § 1473(d), post-filing claims arising out of the business of the debtor.

Subdivisions (b) through (e) may be viewed as exceptions or alternates to the general rule of "home" court venue contained in § 1473(a).

Subdivision (b)[78] deals with "proceedings" by the trustee to recover a money judgment or property worth less than $1,000; or a consumer debt of less than $5,000. The venue for such a "proceeding" lies "only in the bankruptcy court for the district in which a defendant resides." However, if the claim sued on arose post-filing out of the debtor's business, so that both (b) and (d) apply, then the venue rule in (d) will be used.

Subdivision (c)[79] relates to certain "proceedings" by the trustee based upon the trustee's avoidance power under 544(b), or to determine whether specific property is or is not property of the estate. The venue for such actions is determined by nonbankruptcy law. However, if the claim is for money or property under $1,000 or a consumer debt under $5,000, as provided in (b), then the venue rule in (b) applies.

Subdivision (d)[80] relates to "proceedings" by the trustee to enforce post-filing claims arising out of the operation of the debtor's business. Venue for such actions is also determined by nonbankruptcy venue law. This is the only venue provision in § 1473 which does not yield to any of the other subsections of § 1473. The venue for actions based upon post-filing claims arising out of the operation of the debtor's business is based upon nonbankruptcy venue law.

Subdivision (e)[81] relates to claims against the estate which arise post-filing out of the

---

**77.** 28 U.S.C. § 1473: "(a) Except as provided in subsections (b) and (d) of this section, a proceeding arising in or related to a case under title 11 may be commenced in the bankruptcy court in which such case is pending."

**78.** 28 U.S.C. § 1473: "(b) Except as provided in subsection (d) of this section, a trustee in a case under title 11 may commence a proceeding arising in or related to such case to recover a money judgment of or property worth less than $1,000 or a consumer debt of less than $5,000 only in the bankruptcy court for the district in which a defendant resides." (Emphasis added.)

**79.** 28 U.S.C. § 1473: "(c) Except as provided in section (b) of this section, a trustee in a case under title 11 may commence a proceeding arising in or related to such case as statutory successor to the debtor or creditors under section 541 or 544(b) of title 11 in the bankruptcy court for the district where the State or Federal court sits in which, under applicable nonbankruptcy venue provisions, the debtor or creditors, as the case may be, may have commenced an action on which such proceeding is based if

the case under title 11 had not been commenced."

**80.** 28 U.S.C. § 1473: "(d) A trustee may commence a proceeding arising under title 11 or arising in or related to a case under title 11 based on a claim arising after the commencement of such case from the operation of the business of the debtor only in the bankruptcy court for the district where a State or Federal court sits in which, under applicable nonbankruptcy venue provisions, an action on such claim may have been brought." (Emphasis added.)

**81.** 28 U.S.C. § 1473: "(e) A proceeding arising in or related to a case under title 11, based on a claim arising after the commencement of such case from the operation of the business of the debtor, may be commenced against the representative of the estate in such case in the bankruptcy court for the district where the State or Federal court sits in which the party commencing such proceeding may, under applicable nonbankruptcy venue provisions, have brought an action on such claim, or in the bankruptcy

operation of the debtor's business. Such actions may be commenced either in accordance with nonbankruptcy venue law *or* in the "home" court.

As previously noted, the term "proceedings" now comprehends a wide and diverse variety of litigation: "contested matters," "adversary proceedings," "plenary actions," and "disputes related to administrative matters." Some of this litigation will relate to matters inherent in and integral to the duty of the court to administer property of the estate, distribute the proceeds, and determine rights and duties of the debtor vis-a-vis property of the estate and creditors. The nature and scope of other litigation encompassed by the term is only limited by the requirement that it qualify as "civil proceedings arising under title 11 or arising in or related to cases under title 11"; it may well span the spectrum of litigable rights and duties between debtors and interests adverse to the estate.

The Reform Act does not articulate any distinction or recognition of differences in the types of litigation to which the jurisdiction of the new court will be addressed. The jurisdictional grant, like the venue provisions, speaks to "cases" and "proceedings." Nor does the Reform Act attempt or afford a basis to classify or differentiate litigation encompassed by the term "proceedings" except perhaps in the distinction between "proceedings" for which venue is determined under § 1473(b) through (e) and "proceedings" for which venue is determined under § 1473(a).

The "proceedings" described in § 1473(b) through (e) would have been "controversies at law and in equity" generally outside the jurisdiction of the bankruptcy court under the Act. They are neither fundamental nor essential to the administration of bankruptcy estates, i. e., (i) the routine processing of

the steps required between the commencement and closing of the "case," [82] or (ii) the resolution of disputes arising therein. They will now be tried in the bankruptcy court. § 1473(b) through (e) establishes the venue for most of these "proceedings" outside the "home" court. However, § 1473(b) through (e) are not inclusive; a substantial amount and variety of litigation will fall outside the scope and provisions of these venue rules.[83] As a matter of policy, Congress might have identified and classified such matters separately, and established special rules of venue therefor; in effect, other exceptions to the "home" court venue rule of § 1473(a). Administration of bankruptcy "cases" under the Reform Act, as under the prior Act, can accommodate the commencement and trial of such controversies in courts other than the "home" court. The venue for such controversies, like the venue for "proceedings" under § 1473(b) through (e), could have been made to depend upon applicable nonbankruptcy law. The Reform Act contains no such provisions!

Of much greater significance, however, is the fact that Congress did not bifurcate the term "proceedings" to distinguish between (i) "contested matters," "adversary proceedings," and "disputes arising in administrative matters," the subject matter of which is inherent and integral to the administration of a "case" in the court in which the case is pending, and (ii) controversies in the nature of plenary suits. All such "proceedings" are included in the omnibus provisions of § 1473(a), unless excluded by § 1473(b) through (e). § 1473(a) is the only provision in the Reform Act which defines the proper court in which such "proceedings" should be commenced and is responsive to the venue phrase in § 1471(c).

---

*court in which such case is pending."* (Emphasis added.)

**82.** And to which most of the resources and facilities of the bankruptcy court are devoted. Advisory Committee's Introductory Note to Preliminary Draft of the Bankruptcy Rules, 1976 Collier Pamphlet Edition of Bankruptcy Act and Rules, p. 755; Report of the Commis-

sion on the Bankruptcy Laws of the United States, Part 1, Chapter 1, pp. 135–137.

**83.** For example: (i) actions by the trustee to recover a money judgment or property worth $1,000 or more, or a consumer debt of $5,000 or more; (ii) actions by a trustee under avoidance powers contained in § 544(a), 545, 547, 548, and 549.

Viewed in the light of the expanded jurisdiction of the bankruptcy court and the "venue phrase" of § 1471(c), § 1473(a) establishes a rule of "home" court venue for *all litigation* previously described as "contested matters," "adversary proceedings," and "plenary actions," unless excluded by § 1473(b) through (e). As the legislative history indicates, the venue rules were also intended to govern disputes related to "administrative matters" but were not intended to apply to "administrative matters" themselves. "Administrative matters" under the Reform Act, like administrative matters under the prior Act, will be handled by the "home" court, and the venue rules will only be applied if a dispute arises.

The drafters of the Reform Act thereby designed a system for processing administrative matters and "proceedings" which may be summarized as follows:

(i) Administrative matters which are nonadversary will be processed in the "home" court without reference to rules of venue;

(ii) Disputes arising with respect to administrative matters will be commenced pursuant to § 1473(a), in the "home" court;

(iii) Proceedings described in § 1473(b) through (e) will be commenced in the bankruptcy court determined in accordance with the provisions of (b) through (e); and

(iv) All other "proceedings" (i. e., "contested matters," "adversary proceedings," and "plenary actions") will be commenced in the bankruptcy court in which the "case" is pending pursuant to the "venue phrase" of § 1471(c), and § 1473(a).

### § 1475 [84]—Change of Venue

Change of venue for "proceedings" is dealt with in § 1475 and § 1477(a).

Section 1475 permits a transfer "in the interest of justice and for the convenience of the parties." This section echoes the transfer provisions of Rule 782 and permits change of venue.

### § 1477 [85]—Cure or Waiver of Defects

§ 1477(a) was intended to impart the "maximum flexibility" rules of B.A. § 32 and Rule 116 to "proceedings." On the surface it permits a bankruptcy court of improper venue to retain a "proceeding" in the "interest of justice and for the convenience of the parties." The language of the section is deceptive.

Application of the maximum flexibility rules of § 1477(a) to matters inherent in and integral to the duty of the court to administer property of the estate, distribute the proceeds, and determine rights and duties of the debtor vis-a-vis property of the estate, and creditors, is wholly inconsistent with and inimical to the orderly administration of bankruptcy process. The court "for the district in which a case under title 11 is commenced" (i. e., the district of the debtor's domicile, residence, place of business, or principal assets), is the nerve center of the "case," and the functions and duties involved in the administration of the "case." That is the court, for example, in which (i) schedules and statement of affairs are filed and amended; (ii) orders are made for the examination of the debtor and others in aid of administration; (iii) the trustee and counsel for the trustee are appointed; (iv) claims are filed; (v) time is fixed within which the meeting of creditors under § 341(a) will be held; (vi) the last date is fixed and may be extended to except to discharge and object to dischargeability of claims; (vii) appraisers and auctioneers are appointed and compensated and the estate is reduced to cash; (viii) compensation and expenses are fixed for trustees, attorneys, and others; (ix) assets are ordered abandoned; (x) priorities in distribution are determined; (xi) distribution is ordered; and

---

84. See fn. 43.

85. § 1477. Cure or waiver of defects:
"(a) The bankruptcy court of a district in which is filed a case or proceeding laying venue in the wrong division or district may, in the interest of justice and for the convenience of the parties, retain such case or proceeding, or may transfer, under section 1475 of this title, such case or proceeding to any other district or division.
"(b) Nothing in this chapter shall impair the jurisdiction of a bankruptcy court of any matter involving a party who does not interpose timely and sufficient objection to the venue."

(xii) the clerk of the court maintains the files, records, documents and materials related to the administration of the estate.

That is also the court in which "proceedings" are initiated which directly affect the rights of the debtor and property of the estate subject to administration.[86] These include: protecting parties with respect to scandalous or defamatory material or trade secrets contained in a paper filed in a case under § 107; dismissing or suspending proceedings in the case under § 305(a); removing a trustee for cause under § 324; granting relief from the stay under § 362(d); granting relief from the stay without a hearing to prevent irreparable damage under § 362(f); fixing a date for assumption or rejection of an executory contract or unexpired lease under § 365(d)(2); appointing an interim trustee prior to the selection of a chapter 7 trustee under § 703(b); extending the time within which to file complaints excepting to discharge or dischargeability, before the last date has expired under Rule 906(b)(1) and after the last date has expired under Rule 906(b)(2); disallowing proofs of claim under § 502(b)(1)–(9); estimating a contingent or unliquidated claim for purposes of allowance under § 502(c); determining the value of collateral and the amounts of the allowed secured and allowed unsecured claims under § 506(a); subordinating claims for purposes of distribution under § 510(c); disallowing a debtor's claim of exemption under § 522(l); sustaining exceptions to the debtor's discharge under § 727(a) and objections to dischargeability under § 523(a); revoking a debtor's discharge under § 727(d); excusing compliance by a custodian in the interests of creditors under § 543(d); ordering the trustee to abandon property under § 554(b); converting a chapter 7 to a chapter 11 under § 706(b); dismissing the case under § 707(l) for unreasonable delay prejudicial to creditors; appointing additional committees of creditors or equity security holders under § 1102(a)(2); changing membership or size of a committee of creditors under § 1102(c); appointing a trustee or an examiner under § 1104; terminating the appointment of a trustee and restoring the debtor to possession and management under § 1105; limiting the rights and powers of a debtor-in-possession under § 1107(a), or terminating the debtor's right to operate the business under §. 1108; converting a chapter 11 to a chapter 7 case or dismissing the chapter 11 case under § 1112(b); reducing or increasing the period within which the debtor has an exclusive right to file a plan under § 1121(d); approving a written disclosure statement under § 1125(b); conducting a hearing on confirmation under § 1128; and revoking an order of confirmation for fraud under § 1144.

The basic functions of the bankruptcy court would be hopelessly complicated and fragmented if "proceedings" of this nature could be commenced and retained in courts other than the "home" court, and judicial and administrative responsibilities in such matters shared, or divided between, the "home" court and "another" court.[87] The elimination of administrative matters from the definition of the term "proceedings" and the effect of the venue rules is a significant indication that the administration of

---

**86.** Except litigation described in § 1473(b) through (e).

**87.** Assume a Chapter 7 case properly filed and pending in the bankruptcy court in the Southern District of New York. In each of the following instances a request for relief is filed, as indicated. Assume further (i) that each request for relief is by complaint per Rule 703 or motion per Rule 901(6) (whichever is appropriate); and (ii) states facts sufficient to justify the relief requested; and (iii) that a hearing date thereon has been fixed and any notice required has been given as required by law.

(a) A party in interest in Los Angeles requests relief from the bankruptcy court in Los Angeles, under § 107, seeking an order protecting the moving party with respect to a trade secret or confidential research, development or commercial information, or with respect to scandalous or defamatory matter contained in a paper filed in the case in the home court in New York.

(b) A party in interest in Kansas requests relief from the bankruptcy court in Kansas, under § 305(a), seeking an order dismissing or suspending all proceedings in the case because the interests of the creditors and the debtor would be better served.

(c) A party in interest in Seattle requests relief from the bankruptcy court in Seattle, under § 324, seeking an order removing the

bankruptcy estates was not intended to be fragmented or procedures adopted which create a potential for impairing the orderly administration of estates.

trustee appointed by the New York court for cause.

(d) A party in interest in Arizona requests relief from the bankruptcy court in Arizona, under § 362(d), seeking relief from the automatic stay. Other secured creditors file similar requests under § 362(d) in San Diego, Denver, and Milwaukee.

(e) A secured creditor in Oregon requests relief from the bankruptcy court in Oregon, under § 362(f), seeking an order that the stay be vacated without a hearing to prevent irreparable damage to the interests of the secured creditor, and further asserting that the secured creditor will suffer such damage before there is an opportunity for notice and a hearing under 362(d) or (e).

(f) A party in interest in Dallas requests relief from the bankruptcy court in Dallas, under § 365(d)(2), seeking an order fixing a specified period of time (i. e., 30 days) within which the debtor must assume or reject an executory contract or unexpired lease.

(g) A party in interest in Iowa requests relief from the bankruptcy court in Iowa under § 703(b), seeking an order for the appointment of an interim trustee, prior to the election of a trustee in the Chapter 7 in New York.

(h) A party in interest in Kentucky requests relief from the bankruptcy court in Kentucky, under Rule 906(b)(1), seeking an order extending the time within which to file a complaint excepting to the discharge of the debtor, and to determine the nondischargeability of the creditor's claim prior to the expiration of the last date upon which such complaints are required to be filed.

(i) A party in interest in Missouri requests relief from the bankruptcy court in Missouri, under Rule 906(b)(2), seeking an order extending the time within which to file a complaint excepting to discharge and seeking a determination of the nondischargeability of the claim, subsequent to the expiration of the time fixed within which to file such complaints.

(j) A party in interest, in Bangor, Maine, requests relief from the bankruptcy court in Bangor, Maine, under § 502(b)(1) through (9), seeking an order disallowing several proofs of claim filed in the New York case on various grounds asserted in 502(b)(1) through (9).

(k) A party in interest in Boise, Idaho requests relief from the bankruptcy court in Boise, Idaho, under § 502(c), seeking an order estimating, for purpose of allowance, a claim which is contingent and unliquidated or which includes a right to an equitable remedy for breach of performance, wherein such breach gave rise to a right of payment.

(*l*) A creditor in Indiana whose claim is secured by a lien on property in which the estate has an interest requests relief from the bankruptcy court in Indiana, under § 506(a), seeking an order determining the amount of the secured claim and the unsecured claim, and a valuation of the collateral.

(m) A party in interest in Wyoming requests relief from the bankruptcy court in Wyoming, under § 510(c), seeking an order to subordinate for purposes of distribution all or part of the allowed claim of another creditor who resides in Oklahoma.

(n) A party in interest in Mississippi requests relief from the bankruptcy court in Mississippi, under § 522(*l*), seeking an order disallowing the debtor's claim of exemption.

(o) A party in interest in Nebraska requests relief from the bankruptcy court in Nebraska, under § 523(a)(2) and (6) and § 727(a)(2) and (3), seeking an order determining that the creditor's claim is nondischargeable under § 523(a)(2) and (6), and objecting to the debtor's discharge under § 727(a)(2) and (3).

(p) A party in interest in Alabama requests relief from the bankruptcy court in Alabama, under § 727(d)(1), seeking an order, subsequent to the entry of the discharge, revoking the debtor's discharge under § 727(d)(1) as having been obtained through fraud of the debtor, of which the requesting party was unaware until after granting of the discharge.

(q) A party in interest in North Dakota requests relief from the bankruptcy court in North Dakota, under § 543(d), excusing compliance by a custodian with the provisions of § 543(a), (b), and (c); and in support thereof alleges that the interests of creditors would better be served by permitting the custodian to continue in possession, custody and control of the property.

(r) A party in interest in West Virginia requests relief from the bankruptcy court in West Virginia, under § 554(b), seeking an order that the trustee abandon designated property of the estate on the grounds that it is burdensome or of inconsequential value to the estate.

(s) A party in interest in Oklahoma requests relief from the bankruptcy court in Oklahoma, under § 706(b), seeking an order converting the Chapter 7 to a case under Chapter 11.

(t) A party in interest in Louisiana requests relief from the bankruptcy court in Louisiana, under § 707(1), seeking an order dismissing the case pursuant to § 707(1) for unreasonable delay prejudicial to creditors.

2. Make the same assumptions with respect to a Chapter 11 pending before the bankruptcy court in San Francisco.

(a) A party in interest in Florida requests relief from the bankruptcy court in Florida, under § 1102(a)(2), seeking an order for the appointment of additional committees of creditors or equity security holders under § 1102(a)(2).

Moreover, the commencement and retention of such "proceedings" in a court of improper venue will force the debtor or trustee to appear and contest venue of such "proceedings" in the "wrong" court and to marshall people and financial resources for that purpose. Policy considerations underlying the automatic stay are totally at variance with such compulsion. If debtors can be required at all stages of the "case" to appear and contest these "proceedings" commenced in bankruptcy courts throughout the nation, a new dimension has been added to the balance of rights and powers between debtors and creditors in bankruptcy cases, and especially in reorganization cases under Chapter 11. The precarious financial condition of most debtors may well be inadequate to cope with the new formula. A construction of the statute which permits or sanctions such "attack by venue" is neither plausible nor necessary, and should not be adopted in the absence of statutory provisions which are clear and unmistakable.[88]

One suggested solution is to construe § 1477(a) to apply to "proceedings" described in § 1473(a) only when the "proceedings" would have been "controversies at law and

(b) A party in interest in Boston requests relief from the bankruptcy court in Boston, under § 1102(c), seeking an order changing the membership and size of the committee of creditors appointed under § 1102(a)(1) by the San Francisco court.

(c) A party in interest in Maryland requests relief from the bankruptcy court in Maryland, under § 1104(a), seeking an order appointing a trustee. Thereafter (that motion being denied), a creditor in Minneapolis seeks the appointment in the bankruptcy court in Minneapolis of an examiner under 1104(b).

(d) A party in interest in Tennessee requests relief from the bankruptcy court in Tennessee, under § 1105, seeking an order terminating the appointment of a trustee (appointed by the bankruptcy court in San Francisco), and restoring the debtor to possession and management of the property of the estate and the operation of the debtor's business.

(e) A party in interest in Ohio requests relief from the bankruptcy court in Ohio, under § 1107(a), seeking an order limiting and imposing conditions upon the rights and powers to be exercised by the debtor in possession. Simultaneously, a creditor in Virginia requests relief under § 1108 in the bankruptcy court in Virginia seeking to terminate the right of the debtor to operate the business.

(f) A party in interest in Massachusetts requests relief from the bankruptcy court in Massachusetts, under § 1112(b)(1), (2) and (3), seeking an order converting the Chapter 11 to a Chapter 7, or dismissing the Chapter 11 case.

(g) A party in interest in Pennsylvania requests relief from the bankruptcy court in Pennsylvania, under § 1121(d), seeking an order reducing the period within which the debtor has an exclusive right to file a plan.

(h) Subsequent to the expiration of the 120-period contemplated by § 1121(b), a creditor in New York files a proposed plan of arrangement in the bankruptcy court in New York and submits to that court a written disclosure statement, requesting a hearing under § 1125(b) to secure approval by that court of the disclosure statement. The disclosure statement is approved at the hearing and at the request of the creditor filing the plan, the court fixes a hearing date for confirmation of the plan.

(i) A party in interest in Kansas requests relief from the bankruptcy court in Kansas, under § 1144, seeking an order revoking the order of confirmation, for fraud.

3. Each of the foregoing requests for relief initiates a "proceeding" for which proper venue is the court in which the case is pending, pursuant to § 1471(c) and § 1473(a). In each instance, the proceeding was commenced in a court of improper venue. Under Brineys' view of § 1477(a), the debtor or trustee in each instance must appear and contest the "proceeding" in the court of improper venue or move to transfer the "proceeding" to the "home" court, which request may be denied by the court of improper venue "in the interest of justice and for the convenience of the parties," under § 1477(a).

88. The architects of our republic recognized from the outset the need to eliminate, or at least minimize, the danger inherent in struggles for jurisdiction between competing courts. (*The Federalist Papers*, 56, 2d Ed. R. Fairfield 1966.) Our legal system is not well served by statutory interpretation which permits or precipitates confrontations between courts competing for jurisdiction over a given subject matter. See *In re Coleman American Companies, Inc.*, 6 B.R. 251 (Bkrtcy.D.Colo.1980); and *Coleman American Companies, Inc. v. The Littleton National Bank*, 7 B.C.D. 127, 8 B.R. 384. Historically, disputes over the power of the bankruptcy court to assert its jurisdiction over specific property to the exclusion of a competing court involved a competing *nonbankruptcy* court. *Isaacs v. Hobbs Tie & Timber Co.* (1931), 282 U.S. 734, 51 S.Ct. 270, 75 L.Ed. 645; *White v. Schloerb* (1900), 178 U.S. 542, 20 S.Ct. 1007, 44 L.Ed. 1183; *Murphy v. John Hofman Co.* (1909), 211 U.S. 562, 29 S.Ct. 154, 53 L.Ed. 327; *Dayton v. Stanard* (1916), 241 U.S. 588, 36

in equity" under the prior Act. Such an interpretation recognizes the duality of the meaning of the term "proceedings" in the Reform Act and eliminates the administrative chaos which results from application of § 1477(a) to the "other" type of "proceedings." Such a construction, however, would reintroduce the summary-plenary jurisdiction syndrome of the prior law, and is wholly inconsistent with the announced purpose of the drafters to eliminate the summary-plenary jurisdiction syndrome from the Reform Act.[89] The statute lends itself to a simpler and more clear-cut interpretation.

"It is well established that our task in interpreting separate provisions of a single Act is to give the Act 'the most harmonious, comprehensive meaning possible' in light of

the legislative policy and purpose."[90] "Every statute must be viewed in its entirety so that each part has a sensible and intelligent effect harmonious with the whole. It is not be presumed that Congress intended any part of a statute to be without reasonable meaning."[91]

Accordingly, construing the venue provisions with respect to "proceedings" as a whole, it must be concluded that the maximum flexibility provisions of § 1477(a) could not have been intended to sanction the destruction of orderly process of the bankruptcy court or to create the potential for "attack by venue," noted above;[92] and were not intended to apply to "proceedings" within the venue provisions of § 1473(a).

S.Ct. 695, 60 L.Ed. 1190; *Straton v. New* (1931), 283 U.S. 318, 51 S.Ct. 465, 75 L.Ed. 1060; *Metcalf v. Barker* (1903), 187 U.S. 165, 23 S.Ct. 67, 47 L.Ed. 122. Recurrence of this type of conflict between competing *bankruptcy* courts is not an attractive prospect.

**89.** See fn. 18.

**90.** *Weinberger v. Hynson, Westcott & Dunning,* 412 U.S. 609, 631–632, 93 S.Ct. 2469, 2484, 37 L.Ed.2d 207 (1973).

**91.** *Payne v. Panama Canal Co.,* 607 F.2d 155, 165 (5th Cir. 1979).

**92.** The Legislative History of § 1477 is no less misleading than the section itself:
"This provision, *derived from* 28 U.S.C. 1406(a) and (b), provides that the bankruptcy court may, in the interest of justice and for the convenience of the parties, *retain* a case or proceeding laying venue in the wrong district or *transfer* it to any other district or division. In addition, it provides that the provisions governing venue do not impair the jurisdiction of a bankruptcy court of any matter involving a party who does not interpose timely and sufficient objection to venue." (Emphasis added.) H.R. 95–595, p. 447.
28 U.S.C. § 1406(a) and (b) provide:
"(a) The district court of a district in which is filed a case laying venue in the wrong division or district *shall dismiss,* or if it be in the interest of justice, *transfer* such case to any district or division in which it could have been brought." (Emphasis added.)
"(b) Nothing in this chapter shall impair the jurisdiction of a district court of any matter involving a party who does not interpose timely and sufficient objection to the venue."

§ 1406(a) recognizes "the right to have a cause heard in the court of the proper venue," referred to by the Supreme Court in *Panhandle E. Pipeline Co. v. Federal P. Comm.,* 324 U.S. 635, 65 S.Ct. 821, 89 L.Ed. 1241 (1945); and *Industrial Ad. Assoc. v. Commissioner of Int. Rev.,* 323 U.S. 310, 65 S.Ct. 289, 89 L.Ed. 260 (1945). "Timely and sufficient objection" to improper venue triggers the mandatory language "shall dismiss" which can only be avoided if the court determines that the "interest of justice" warrants transfer to a court of proper venue. Under § 1406(a), the consequences of failure to commence the action in a court of proper venue is *dismissal* or *transfer* if "timely and sufficient objection is made. § 1406(a) does not contemplate *retention* in the court of improper venue in the face of "timely and sufficient objection."

§ 1477(a), on the contrary, eliminates the "right to have a cause heard in court of the proper venue." The court of improper venue is expressly authorized to *retain* the case "in the interest of justice and for the convenience of the parties" despite "timely and sufficient objection." § 1477 thereby effects a significant *substantive departure from the provisions of* § 1406 and a material change in the rights of litigants.

The implications of § 1477(b) (adopted in haec verba from § 1406(b)) are similarly opaque.

§ 1406(b) recognized that venue provisions are not jurisdictional and can be waived. (*Panama R. R. Co. v. Johnson,* 264 U.S. 375, 44 S.Ct. 391, 68 L.Ed. 748). The failure to "interpose timely and sufficient objection to the venue" constitutes such a waiver. Retention in the court of improper venue in such event does not render a judgment suspect for lack of jurisdiction.

■ For this reason, the Colorado bankruptcy court was not a proper court in which to file or try Brineys' adversary "proceeding." That "proceeding" is within the "venue phrase" of § 1471(c) and the express venue provisions of § 1473(a). Moreover, the retention of the adversary proceeding in the Colorado court was not authorized by the provisions of § 1477(a).

The sole remaining issue raised by Brineys' motion relates to the propriety of the exercise of the equitable powers of the court to aid Brineys in their effort to proceed in Colorado.

*The equities of Brineys' position*

Prior to the filing of the adversary proceeding in Colorado, the Brineys, through California counsel, were fully aware of the pendency of the bankruptcy case in the Central District of California. Brineys' counsel had examined the debtors pursuant to Rule 205 and concluded from that examination that grounds existed to except to discharge and to establish the nondischargeability of Brineys' judgment claim. Counsel for Brineys communicated with the Chapter 7 trustee in California, told the trustee of the 205 examination, and expressed the view that the debtors' conduct was such as to bar the debtors' right to a discharge. Brineys' counsel requested the trustee to take appropriate action, based on facts and circumstances known to Brineys. There is no reason to assume that Brineys'

counsel expected the trustee to proceed in any other court than the bankruptcy court in the Central District of California. Only after making this request did the Brineys, through Colorado counsel, file the adversary proceeding in Colorado. Selection of the Colorado court was deliberate and intentional.

■ Venue rules are important and meaningful. Improper venue is a defense to a claim for relief in the federal court.[93] The role of the lawyer in this regard is of special significance. Citation of authority is not necessary to support the proposition that lawyers are "officers of court" and subject to special rules and canons governing their conduct and deportment. Of necessity, courts must rely upon attorneys as "officers of court" in the routine administration of our legal system. This is well illustrated by Rule 911 of the Rules of Bankruptcy Procedure, which provides in material part:

"The signature of an attorney on any pleading, motion, or application served or filed in a bankruptcy case constitutes a certificate by him that he has read the paper; that to the best of his knowledge, information, and belief, there is good ground to support it; and that it is not interposed for delay *or other improper purpose.*" (Emphasis added.)

The rule further provides:

"If a pleading or written motion or application is not signed or is signed with

The legislative intent in using the same language in § 1477(b) is unclear. § 1477(a) permits *retention* in the court of improper venue notwithstanding "timely and sufficient objection", i. e., under circumstances in which § 1406(a) mandates *dismissal* or *transfer* § 1477(a) permits *retention.* Query: where "timely and sufficient objection" is made to improper venue under § 1477(a), does that objection rise to the dignity of a challenge to jurisdiction? § 1406(b) had no such implications: the court dismissed or transferred if "timely and sufficient" objection was made. The absence in § 1477(a) of a duty to dismiss may be argued as a basis to read § 1477(b) to suggest a jurisdictional problem where the court of improper venue retains despite "timely and sufficient objection." Such a reading of

§ 1477(b) is not consistent with the power of the court in § 1477(a) to retain "in the interest of justice and for the convenience of the parties." Confusion is not easily avoided in reading or seeking to apply § 1477(b).

93. F.R.Civ.P. 12(b) defines how defenses in law or fact are asserted. The rule provides that: "every defense, in law or fact, ... shall be asserted in the responsive pleading thereto if one is required, except that the following defenses may at the option of the pleader be made by motion: ... (3) improper venue." F.R.Civ.P. 12(b)(3) is made applicable in adversary proceedings in bankruptcy by Rule 712(b), which provides that "subdivisions (b)–(h) of Rule 12 of the F.R.C.P. apply in adversary proceedings," with exceptions not here relevant.

intent to defeat the purpose of this rule, it may be stricken as sham and false...."

█ It is difficult to avoid the conclusion that Brineys utilized Colorado venue as an offense ploy to compel the debtors in a no asset bankruptcy to justify and defend the right to a discharge and release of Brineys' claim in a court over 1,000 miles from the court in which the "case" was pending. The circumstances surrounding selection of the Colorado court evidence an intent to select a court of improper venue which "smacks of harassment" or "bad faith."[94] Brineys thereby created a situation in which ongoing "proceedings" were pending in two different bankruptcy courts simultaneously. The potential for conflict, ambiguity and inconsistency was deliberately created, and compounded by Brineys' failure to notice a motion, file a pleading, or otherwise appear at the discharge hearing to prevent or delay the order of discharge. Moreover, Brineys refer to no extraordinary circumstances which prevented their seeking relief through usual channels.[95]

Brineys' conduct has little appeal to a court of equity.

*Conclusion*

The conclusions reached with respect to the contentions made by Brineys in support of their motion may be summarized as follows:

(1) The Colorado Bankruptcy Court had jurisdiction to accept, file, and process the adversary "proceeding" objecting to the debtors' discharge, and seeking a determination of the dischargeability of the Brineys' claim against the debtors, despite the fact that the debtors' case was pending in the Bankruptcy Court in the Central District of California.

(2) The Colorado Bankruptcy Court was not a proper court in which to file and try the complaint instituting that adversary "proceeding"; i. e., was not a court of proper venue.

(3) The Colorado Bankruptcy Court was not authorized to retain and try that adversary "proceeding" under the venue provisions of the Bankruptcy Reform Act.

(4) The bankruptcy court as a court of equity is authorized to vacate the order of discharge on the grounds specified in F.R. Civ.P. 60(b).

(5) There is no basis in law to support the selection of the Colorado Bankruptcy Court as a court of proper venue, or the retention of the "proceeding" in the Colorado court as a court of improper venue, and the Brineys have made no showing to justify the exercise of equitable discretion to permit continuation of the "proceeding" in Colorado.

Accordingly, the motion is denied.

SO ORDERED.

---

**94.** *1 Moore's Federal Practice,* ¶ 146[5], p. 1666; *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 507–508, 67 S.Ct. 839, 842–843, 91 L.Ed. 1055 (1947).

**95.** See fn. 9.